In re William O'Dell SPELL, Bankrupt.

COMMISSIONER OF ADMINISTRA-
TIVE SERVICES, Plaintiff-Appel-
lee,

v.

William O'Dell SPELL,
Defendant-Appellant.

No. 574, Docket 80–5042.

United States Court of Appeals,
Second Circuit.

Argued Dec. 17, 1980.

Decided Feb. 26, 1981.

As Amended March 16, 1981.

---

Francis X. Dineen, New Haven, Conn., for plaintiff-appellee.

Wendell S. Gates, Hartford, Conn. (Carl R. Ajello, Hartford, Conn., of counsel), for defendant-appellant.

Before FEINBERG, Chief Judge, KEARSE, Circuit Judge, and METZNER, District Judge.*

FEINBERG, Chief Judge:

William O'Dell Spell appeals from a judgment of the United States District Court for the District of Connecticut, Ellen Bree Burns, J., affirming a ruling of bankruptcy judge Trevethan that Spell owed $10,123.29 to appellee Commissioner of Administrative Services for the State of Connecticut and that this debt had not been discharged by Spell's bankruptcy. The only question on appeal is whether the dischargeability of Spell's debt to the State should be determined by the law in effect on August 9, 1978, when Spell was discharged in bankruptcy, or by the law in effect on March 4, 1980, when the bankruptcy judge ruled on the Commissioner's complaint to determine dischargeability of the debt.[1] Since the relevant law changed between these two

dates, the issue is crucial. Because we conclude that the bankruptcy judge should have applied the law as it existed at the time he determined the dischargeability of the debt, we reverse the judgment of the district court.

I

The relevant facts can be summarized briefly. Appellant Spell is the father of two minor children whose mother had been receiving assistance from the Aid for Families with Dependent Children (AFDC) program from July 1974 until May 1978, when appellant filed his petition in bankruptcy. Prior to that time, the mother executed an assignment to the State of her support rights against Spell. This obligation was listed in Spell's bankruptcy petition as a debt owed to the State of Connecticut in the amount of $10,123.29, the sum that Spell was obligated to repay the State for the AFDC payments to the mother of his children over the prior four years. On August 4, 1978, the Commissioner filed a complaint to determine the dischargeability of this debt, but did not object to the discharge of the bankrupt. In the absence of any objections, the bankruptcy court on August 9, 1978 granted Spell a discharge, which released him from "all dischargeable debts." The printed form order did not determine whether the debt to the Commissioner was dischargeable, but clearly contemplated the possibility of a later determination of the dischargeability of a particular debt.

The bankruptcy judge did not rule on the Commissioner's complaint until March 4, 1980. Prior to that date, the law relating to the discharge in bankruptcy of obligations to repay support payments to the State had changed. Before November 6, 1978, the effective date of the Bankruptcy Reform Act (BRA), the Social Security Act

---

* Hon. Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation.

1. On April 30, 1980, the bankruptcy judge reopened the March 4, 1980 judgment to allow the parties to present evidence as to the exact amount of the debt. Apparently, there have been no further proceedings pending this appeal.

prohibited the discharge in bankruptcy of a child support obligation assigned to a state. 42 U.S.C. § 656(b). This prohibition was repealed by § 328 of Title III of the BRA of 1978, Pub.L.No. 95–598, 92 Stat. 2549. Consequently, by the time the bankruptcy court ruled on the Commissioner's complaint, the law preventing the discharge of this type of debt had not been in effect for 16 months.

On the basis of this record, the bankruptcy judge held that the law should be applied as it existed on August 9, 1978, the date of Spell's bankruptcy discharge. The judge relied on the language of that discharge, noting that "[t]he discharge speaks as of the date that it became an order of the court," thereby releasing Spell from all debts that were dischargeable · as of that date. This decision was affirmed without opinion by the district court in August 1980, and this appeal followed.

## II

We have been unable to find any reported opinion squarely ruling on the precise question now before us. It is, however, but a particular instance of the general problem of how a court should take note of a change in the law between the date of some initial action, either by the parties or by a court, and the date of actual decision of the issue in question. As early as 1801, the Supreme. Court was called upon to resolve this question in one of its most difficult contexts: to what extent should an appellate court take cognizance of a change of law which occurs between the date a lower court reached its decision and the date the appellate court renders its own judgment. In *United States v. The Schooner Peggy*, 5 U.S. 37, 40, 1 Cranch 103, 110, 2 L.Ed. 49 (1801), Chief Justice Marshall made it clear that even in instances where it is necessary to set aside a judgment "rightful when made" because of an intervening change of law, the appellate court is required to do so; to hold otherwise would be to deny the governing law its proper effect. See also *Thorpe v. Housing Authority*, 393 U.S. 268, 281 & n.38, 89 S.Ct. 518, 526 & n.38, 21 L.Ed.2d 474 (1969) ("an appellate court must apply the law in effect at the time it renders its decision").

This general principle that a court must apply the law that exists as of the date it renders its decision has been consistently applied in cases arising under the Bankruptcy Act. The issue has arisen most frequently in the context of a change of law in the period between the filing of a bankruptcy petition and the court's ruling on the bankrupt's application for a discharge from bankruptcy. In these cases, this circuit has repeatedly held that "[t]he grounds which would bar a discharge [must be] determined by the law in force at the time the judge passed on the question of discharge . . . ." *In re Carter*, 32 F.2d 186, 188 (2d Cir. 1929); see also *United Wallpaper Factories v. Hodges*, 70 F.2d 243 (2d Cir. 1934); *Royal Indemnity Co. v. Cooper*, 26 F.2d 585 (4th Cir. 1928); *In re Sloss*, 192 F.Supp. 136 (S.D.N.Y.1961). It is noteworthy that this rule was applied even though the result for the bankrupt was harsh, as in *In re Carter*, supra, or *Royal Indemnity Co. v. Cooper*, supra. In keeping with these precedents, we recently held that a bankrupt was entitled to the benefit of the amendment allowing discharge of support obligations because, even though the amendment was not yet law when the bankruptcy petition was filed, the amendment was in effect at the time the dischargeability of the debt was determined. *In re Blair*, 633 F.2d 202 (2d Cir. 1980.)[2]

Appellee argues that *Blair* and the other cases cited above are distinguishable because in each the change of law occurred prior to the date the bankrupt received his discharge, albeit after the petition in bankruptcy had been filed. Appellee therefore

---

**2.** Although our decision in *Blair* was an unpublished order and should therefore ordinarily not be cited as precedent in other proceedings, it was argued on the same day before the same bankruptcy judge by the same lawyers as the instant case, and both sides in this case, we are told, stipulated before the bankruptcy judge that a subsequent decision by this court in *Blair* would be controlling on the effective date of the BRA. We are therefore taking steps to have our decision in *Blair* published.

**378**

claims that the bankruptcy court in this case correctly concluded that since the discharge "speaks as of the date it became an order of the court . . . [i]t follows that the debts from which the defendant is released are those debts which were dischargeable on the date the discharge was entered." We find this argument unpersuasive because it ignores the general doctrine already referred to, inflicts an unnecessarily harsh result upon a bankrupt and is implicitly based on a flawed assumption about the relationship between the general determination of dischargeability under Bankruptcy Act § 14, and Code, 11 U.S.C. § 32, and the determination of whether any particular debt is dischargeable under Bankruptcy Act § 17, and Code, 11 U.S.C. § 35.[3]

As the language of § 14 makes clear, a bankruptcy court determining whether to grant a discharge is primarily concerned with the actions of the bankrupt, not the nature of any of the bankrupt's specific debts. As long as the bankrupt is an individual who has sought the protection of the bankruptcy court without fraud, inexcusable neglect, or any of the other specified grounds for denial of the protection of the statute listed in § 14, he is entitled to a discharge. Under § 14(b), the discharge releases the bankrupt from all debts that arose before the date of the order for relief under this chapter, except as provided by Bankruptcy Act § 17.

That section, on the other hand, focuses specifically on the nature of the debt to be discharged. In pertinent part, § 17 consists of a list of specific categories of debts that may not be discharged in bankruptcy. Section 17 thus ordinarily addresses different issues than those considered under § 14. This was underscored by the practice under the Bankruptcy Act prior to 1970, by which the dischargeability of a particular debt was not even considered by the same court that determined whether the bankrupt was

entitled to a discharge. This court held repeatedly that, under the then existing statutory scheme, "what shall be the effect of discharge . . . is a function of the court in which any given claim or debt or demand is advanced, and not of the bankruptcy court." *In re Bernard*, 280 F. 715, 717 (2d Cir. 1922); see also, *In re Havens*, 272 F. 975 (2d Cir. 1921). The debtor had to plead his discharge as a defense to an action by a creditor, leaving the question whether the debt was dischargeable to the tribunal (frequently a state court) in which the creditor had sued. Cf. *Fallick v. Kehr*, 369 F.2d 899, 905 (2d Cir. 1966). This latter determination by another court was usually made after the original decision to grant the general discharge, see generally, H.R.Rep.No. 91–1502, 91st Cong. 2d Sess., (1970), *reprinted in* [1970] U. S. Code Cong. & Ad.News 4156 (hereinafter cited as House Report); Brendes & Schwartz, Schlockmeister's Jubilee: Bankruptcy for the Poor, 40 Ref. J. 69, 69–70 (1966), and was considered so distinct that a bankruptcy court could not deny a discharge under § 14 even though it was fairly clear that one of the debts listed by the bankrupt was not dischargeable under § 17. *In re Scandiffio*, 63 F.Supp. 264 (E.D.N.Y. 1945).

In 1970, Congress passed the Dischargeability Act, Pub.L.No. 91–467, 84 Stat. 990 (1970), which specifically directed bankruptcy courts to determine the dischargeability of particular debts. The purpose of the amendment was to prevent creditors from taking unfair advantage of bankrupts by "bring[ing] suit in state courts after a discharge in bankruptcy has been granted . . . in the hope that the debtor will not appear in that action, relying to his detriment upon the discharge." House Report, supra, at 4156; see also *Matter of Copeland*, 412 F.Supp. 949, 953 (D.Del.1976). But this did not alter the fundamental distinction between the decision to grant a discharge and

---

**3.** In 1978, Congress passed the Bankruptcy Reform Act, Pub.L.No. 95–598, 92 Stat. 2549, which replaced the Bankruptcy Act with the current Bankruptcy Code. Under Title I of the new Code, sections 14 and 17 have been replaced by 11 U.S.C. § 727, and 11 U.S.C. § 523, respec-

tively. Since the substance of these two new provisions, in relevant part, is the same as former sections 14 and 17, we will, for the sake of convenience, continue to refer in this opinion to these provisions by their old section numbers.

the determination of what debts will be dischargeable; sections 14 and 17 continue to have a different focus.

It is clear, therefore, that Congress regarded the determination of the dischargeability of any particular debt as a separate and distinct question from the decision to grant a discharge. We believe that in making any such separate judicial determination under § 17, the bankruptcy court is required by the cases discussed above to rule in accordance with the governing law at the time its decision is rendered. This conclusion is reinforced by the remedial character of the Bankruptcy Act as a whole and of this amendment in particular. As the Supreme Court stated in *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1933) (citations omitted), "[o]ne of the primary purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes.'" The statutory amendment involved in this case repealed a provision of the Social Security Act that had only been in effect for three years [4] and that, in the opinion of Congress, had been too harsh in denying bankruptcy relief to anyone who owed a support obligation to a state. Undoubtedly for this reason, Congress commanded this repeal to take effect immediately, as we noted in *Blair*. We see no good reason why this expression of Congressional policy should not be strongly persuasive here.

For all of these reasons, we conclude that the judgment of the district court should be reversed with instructions to enter judgment for appellant.

---

**4.** 42 U.S.C. § 656(b) was adopted on January 4, 1975, Pub.L.No. 93-647, 88 Stat. 2356 (1975). Connecticut, however, did not amend its law to conform to the new federal policy until June 1976, P.A. 76–334, and did not pass implementing regulations until February 1978, a mere eight months before the repeal of this provision by § 328 of Title III of the BRA.