In re Theodore Benedict AHRENDT, Debtor.

Theodore Benedict AHRENDT, Plaintiff,

v.

WAUKESHA COUNTY SOCIAL SERVICES DEPARTMENT, Defendant.

Bankruptcy No. 81–02423.

United States Bankruptcy Court, E.D. Wisconsin.

March 21, 1983.

---

Willis B. Swartwout, III, Swartwout & Eichfield, S.C., New Berlin, Wis., for debtor.

Terence P. Cahill, Asst. Corp. Counsel, Waukesha, Wis., for Waukesha County Social Services Dept.

## DECISION

D.E. IHLENFELDT, Bankruptcy Judge.

The specific issue in this nondischargeability action [1] is whether the result shall be determined by the law in effect at the time the debtor filed his bankruptcy petition or by the law in effect at some other time such as the date of discharge or the date the issue is decided.

The parties have submitted an agreed statement of facts. The debtor filed a petition under chapter 7 of the Bankruptcy Code on August 10, 1981 at which time Waukesha County Department of Social Services had a support arrearage claim of $14,040. The claim had been assigned to it by the debtor's former wife in order that

1. The parties filed a joint "Petition for Declaratory Ruling" which the court treats as the

she might obtain public assistance. The debtor was granted a discharge on November 9, 1981.

The applicable section of the Bankruptcy Code, § 523(a)(5)(A), was amended on August 13, 1981. Prior to that date, it read as follows:

"Section 523(a). A discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise. . . ."

Effective August 13, 1981, Public Law 97–35, § 2334(b) 95 Stat. 863, amended subsection (A) to read as follows:

"(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise, (other than debts assigned pursuant to Section 402(a)(26) of the Social Security Act). . . ."

The parties are in agreement that prior to the amendment of August 13, 1981, the support debt was dischargeable. The added parenthetical clause made such assigned support obligations nondischargeable after August 13, 1981.

This question has been addressed by other courts. One group of cases holds that the law to be applied in a nondischargeability action is the law in effect when the judge decides the case. *In re Spell,* 650 F.2d 375 (2d Cir.1981); *In re Leach,* 15 B.R. 1005, 5 C.B.C.2d 1091, 8 B.C.D. 587 (Bkrtcy.1981); *In re Kuehndorf,* 24 B.R. 555, 7 C.B.C.2d 733, 9 B.C.D. 906 (D.C.W.D.Wis.1982). More recently, a series of bankruptcy court decisions have uniformly held that the law to be applied is the law in effect at the time the bankruptcy case is commenced—the

equivalent of an adversary proceeding.

date the petition is filed. *In re Heldt,* 17 B.R. 519, 5 C.B.C.2d 1575 (Bkrtcy.S.D.1982); *In re Flamini,* 19 B.R. 303, 7 C.B.C.2d 566, 8 B.C.D. 1289 (Bkrtcy.E.D.Mich.1982); *In re Hazen,* 19 B.R. 545, 9 B.C.D. 48 (Bkrtcy. Idaho, 1982); *In re Morris,* 21 B.R. 816 (Bkrtcy.N.D.Iowa, 1982). This court believes the reasoning found in these latter cases is correct and elects to follow them.

As Judge Brody points out in *Flamini,* the line of authority represented by the *Spell*[2] and *Leach* cases is founded upon *In re Seaholm,* 136 F. 144 (1st Cir.1905). At the time *Seaholm* was decided, the debtor had to file a formal application in order to receive a discharge. The application had to be filed between one and twelve months after the debtor was adjudged a bankrupt, although if it was "made to appear to the judge that the bankrupt was unavoidably prevented from filing it within such time," the court could grant an additional six months for filing the application. 1A Collier on Bankruptcy (14th ed.) p. 1266–1269.[3] *Seaholm* held that "when the bankrupt made his application for a discharge in this proceeding, he invoked the law as it then was." *In re Seaholm,* 136 F. 144 at 147. Applying the rationale in *Seaholm* to present procedure would indicate applicable law ought to be that in effect on the date the bankruptcy case is filed. The individual debtor in effect seeks a discharge by the act of filing a bankruptcy petition, and the court must grant it unless there is objection by a party in interest. §§ 727(a) and (c) of the Code.

■ Historically, the date on which the bankruptcy petition is filed has been of "pivotal importance." 1 Collier on Bank-

ruptcy (14th ed.) p. 86. In fact, over the years, the bankruptcy petition has been one of the few documents filed in federal court on which the hour and minute of filing are noted by the clerk. Debts incurred prior thereto, if not otherwise nondischargeable, will be discharged, and debts and obligations incurred after that moment in time, regardless of their character, will not under any circumstances be discharged. The filing of the petition activates the automatic stay of § 362(a). It is the moment which marks the line of cleavage between bankruptcy and non-bankruptcy assets—what the trustee takes for creditors and what the debtor retains for his "fresh start." *Hollytex Carpet Mills v. Tedford,* 691 F.2d 392, 9 B.C.D. 1087, 7 C.B.C.2d 551 (8th Cir.1982). It constitutes the terminal point of time for reckoning lien and preference avoidance periods (§ 547(b)(4)), and whether a lease or executory contract remains existent for a trustee or debtor in possession to assume or reject. 2 Collier on Bankruptcy (15th ed.) p. 365–30; *In re Commodity Merchants, Inc.,* 538 F.2d 1260 (7th Cir.1976).

■ The *Flamini* and *Morris* cases emphasize the gravity of the decision which must be made by a debtor contemplating whether or not to file bankruptcy, and the fact that the scope of the discharge can be the single most important factor for his consideration. The point is also valid with respect to a creditor who may be contemplating the filing of an involuntary petition in bankruptcy. The decision to file or not to file is a momentous one, whether made by debtor or creditor, and the reasonable expectations of such persons, who act in

2. As noted in *In re Morris, supra,* 21 B.R. at 819, fn. 9, the *Spell* decision "reached the incorrect result in that case in finding that the debt was dischargeable pursuant to then 11 U.S.C. § 523(a)(5) because the Court failed to take note of § 403(a) of the Bankruptcy Reform Act of 1978. That section states that a case commenced under the Bankruptcy Act of 1898 'and all matters and proceedings in or relating to such cases, shall be conducted and determined under such Act as if [the Bankruptcy Reform Act of 1978] had not been enacted.' [See *In re Geiger Enterprises, Inc.,* 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542, 5 C.B.C.2d 1085, 8 B.C.D.

623]. If the *Spell* Court had followed the commands of this 'savings provision,' it would have found the debt to be nondischargeable because support payments assigned to the state were considered to be nondischargeable under the Bankruptcy Act of 1898."

3. In 1938 the law was amended to provide that the adjudication itself should operate as an application for a discharge. Bankruptcy Rule 404 a, effective October 1, 1973, eliminated the legal fiction that the adjudication operated as an application for a discharge.

reliance upon existing legislation, ought not to be frustrated. It is undoubtedly for this very reason that, as pointed out in the *Flamini* and *Morris* cases, it is a primary rule of statutory construction that laws are enacted for the future and that they should not be given retrospective effect unless this is shown to be the unequivocal and inflexible import of their terms, and the manifest intention of the legislature. A detailed discussion of this presumption against retroactivity, together with supporting case authority, can be found in the *Flamini* and *Morris* cases and will not be repeated here.

Aside from debts made nondischargeable by §§ 523(a)(2), (4) and (6), actions to determine the dischargeability of debts can be and are commonly filed at any time, even years after the bankruptcy case has itself been closed. To permit a debtor to apply to the court long after a bankruptcy case has been closed, when a legislative change has been made from nondischargeability to dischargeability, and have a debt that was listed in his bankruptcy schedules declared discharged because of the law in existence at the time the court makes its decision, seems quite illogical. The rationale shows no improvement where the situation is reversed and it is the creditor who is asking the court to declare the debt to be nondischargeable. In the recent past, as is not unusual, a number of proposals for changes in the dischargeability of debts have been pending in Congress. If the law to be applied is that in existence at the time of the decision, should not a careful attorney, whether representing debtor or creditor, commence a dischargeability action, whenever changes are proposed or seem imminent, so as to have a decision on record and thus protect his client against the possibility that the law will be changed? Should the result turn on whether or not and when an attorney might elect to file such action?

Application of the law existent at the time the discharge is entered is no improvement. This date too can vary widely, even

with respect to two bankruptcy cases that were filed at the same time. It is not uncommon for trustees or creditors, pending receipt of requested information from the debtor and often by agreement with the debtor, to obtain extensions of time for filing objections to discharge and thereby delay the entry of the discharge. Should the principles and rules dealing with such extensions of time in effect become the determining factor in whether or not a particular debt is to be discharged? Where there is delay in debtor-creditor negotiations regarding the possible reaffirmation of a debt, the parties often request that entry of the discharge be delayed in order for them to comply with the requirements of § 524(c)(1).[4] Record numbers of bankruptcy cases are being filed at present, one effect being a resultant delay in the trial of cases, including those involving objections to discharge. Should the progress in negotiating the reaffirmation of a totally unrelated debt, or the state of the court's calendar, in effect determine the date of applicable dischargeability law? Clearly the rights of the parties ought not to be determined by such fortuitous circumstances as these.

---

4. Reaffirmation of a dischargeable debt is enforceable "only if—(1) such agreement was made before the granting of the discharge...;"