**In the Matter of UNITED GROCERS CORPORATION, Debtor.**

**OFFICIAL CREDITORS COMMITTEE OF UNITED GROCERS CORPORATION, Plaintiff,**

v.

**QUICK CHECK FOODSTORES, INC., Carlton Durling, Stanley L. Bartels, Laventhol and Horwath, C.P.A. and George R. Matash, Defendants.**

**Misc. No. 83–237.**

United States District Court, D. New Jersey.

June 1, 1983.

---

## OPINION

CLARKSON S. FISHER, Chief Judge.

This case comes before this court upon certification from a judgment of dismissal by the United States Bankruptcy Court for this district. For the reasons stated herein, the decision of the bankruptcy court is reversed, and the instant action remanded to that court.

In March of 1981 United Grocers Corporation filed for reorganization pursuant to chapter 11 of the Bankruptcy Code. In December 1982 the debtor's official credi-

tors committee brought suit in the bankruptcy court for this district, with 28 U.S.C. § 1471 as the jurisdictional basis. Defendants Quick Chek, Carlton Durling (president of Quick Chek), and Stanley Bartels (president of debtor) moved to dismiss the action for lack of subject-matter jurisdiction. The bankruptcy court, in the face of respected authority, granted this motion, finding that (1) the district court possesses no jurisdiction over bankruptcy matters; and (2) even if this court has such jurisdiction, it lacks the authority to refer the matters to the bankruptcy court.

That opinion relies principally on the United States Supreme Court's holding in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). In that case, the Court addressed the granting by the Bankruptcy Reform Act of 1978 (the Act) of jurisdiction to the bankruptcy courts over "all civil proceedings arising under Title 11 [bankruptcy] [of the United States Code] or arising in or related to cases under Title 11." See 28 U.S.C. § 1471(c). The Court ruled that this broad grant of jurisdiction was a violation of article III of the United States Constitution, in that it gave article III authority to judges without the characteristics of life tenure and protection against salary diminution specified by that article. The Court stayed its *Northern Pipeline* judgment from June 24, 1982, until (after an extension) December 24, 1982, in order to give the Congress "an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws." *Northern Pipeline,* at ——, 102 S.Ct. at 2880. This stay expired without any relevant action being taken by Congress.

In anticipation of the expiration of the Supreme Court's stay, and in the realization of the presence of exceptional circumstances, the judges of the district court of New Jersey (through an emergency resolution) promulgated rule 47. By the terms of this rule, "[a]ll cases under Title 11 and all civil proceedings arising under Title 11 or arising

in or related to cases under Title 11 are referred to the bankruptcy judges of this district." Rule 47(B)(1). This rule was intended to give bankruptcy judges the authority to act until Congress enacted remedial legislation, or until March 31, 1984, whichever first occurred. It is this rule which the bankruptcy judge finds to be in contravention of the *Northern Pipeline* holding and of the constitutional separation-of-powers doctrine. In so doing, the court below misinterprets both the scope of the *Northern Pipeline* decision and the very character of the action taken by this district in promulgating rule 47.

While *Northern Pipeline* indeed revoked the Act's broad grant of jurisdiction to the bankruptcy judges, it did not affect the grant to the district courts of subject-matter jurisdiction over bankruptcy matters contained in section 1471(b). Indeed, this was explicitly determined by the Third Circuit in *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190 (3d Cir. 1983). The *Coastal Steel* court found that "the *Northern Pipeline* holding that article III judges must exercise the related proceedings jurisdiction rests on the assumption that the jurisdictional grant is operative." *Coastal Steel Corp.,* at 200. For this reason, the circuit held that this district's rule 47(C)(3)[1] was "consistent with the Bankruptcy Code and the *Northern Pipeline* decision." *Id.* at 200.

In addition to the Third Circuit's definitive statement on this district's interim rule, many other courts of appeals and district courts have upheld the constitutionality and validity of substantially identical interim bankruptcy rules (as acknowledged in the bankruptcy court's own opinion). *See In re Hansen,* 702 F.2d 728 (8th Cir. 1983); *In re Braniff Airways, Inc.,* 700 F.2d 214 (5th Cir.1983) (aff'g *In re Braniff Airways, Inc.,* Misc. No. 4–22–E (N.D.Tex. June 20, 1983)); *In re Color Craft Press Ltd.,* 27 B.R. 962 (D.Utah 1983); *In re Northland Point Partners,* 26 B.R. 860 (D.E. D.Mich.1983). It is clear then that the express position of this circuit, and the nationwide trend as well, is that district courts retain section 1471 jurisdiction over bankruptcy matters.

28 U.S.C. § 1334 presents an additional basis for district court jurisdiction in the bankruptcy area. That provision gives federal courts "original jurisdiction, exclusive of the courts of the states, of all matters and proceedings in bankruptcy," and had provided the jurisdictional foundation for bankruptcy actions filed before title 11 of the 1978 Act came into effect. Section 1334 itself, however, was never repealed. It is thus obvious that Congress intended federal district courts to retain jurisdiction over matters involving title 11 until April 1, 1984, when a new section 1334 is to take effect. *In re Northland Point Partners,* at 861. There is no question that Congress has "vested the district courts at least until 1984 with jurisdiction over bankruptcy matters." *Id.* at 861.

The bankruptcy court below asserts that, even assuming the existence of district court jurisdiction over bankruptcy cases, rule 47 violates the separation-of-powers doctrine through this court performing a legislative function. This conclusion is based mainly on the fact that the Supreme Court had stayed its *Northern Pipeline* judgment in anticipation of congressional action. In particular, the opinion focuses attention on a footnote in the *Northern Pipeline* plurality opinion which stated "[w]e think that it is for Congress to determine the proper manner of restructuring the Bankruptcy Act of 1978 to conform to

1. Rule 47(C)(3) reads as follows:
   Orders and judgments of bankruptcy judges in civil proceedings related to cases under Title 11, but not arising in or under Title 11, or wherever otherwise constitutionally required, judgments as defined in Rule 54(a) of the Federal Rules of Civil Procedure, which would be appealable if rendered by a district judge and which do not result from a stipulation among the parties, shall not be effective and shall not be entered until the judgment has been signed by a district judge. In such proceedings, the bankruptcy judge shall submit findings, conclusions, and a proposed judgment to the district judge.

the requirements of Art. III, in the way that will best effectuate the legislative purpose." *Northern Pipeline,* —— U.S. at —— n. 40, 102 S.Ct. at 2880 n. 40.

It is evident, though, that the district court's promulgation of rule 47 does not usurp any proper legislative function. The emergency resolution adopting the rule specifically states that it ceases to be operational upon the enactment of remedial congressional legislation. It can hardly be said, then, that this court is attempting to "determine the proper manner of restructuring the Bankruptcy Act of 1978." We are instead exercising our constitutional authority to best administer the business properly before us in the absence of any contradictory legislation. In the face of congressional inaction, this court's adoption of rule 47 was both totally appropriate and necessary to avoid the chaos and confusion that would surely have occurred had this court itself remained inert.[2]

The decision of the bankruptcy court, 29 B.R. 309, is reversed, and the action is remanded to that court for further proceedings. An order accompanies this opinion.

---

2. Although the bankruptcy court places a relatively low priority on practicality and expediency in assessing rule 47, it is interesting to note that the court certifies its judgment to this court for review under sections (C)(2) and (C)(5)(A)(ii) of rule 47, a rule that it has held to be invalid.