**HUDSON COUNTY WELFARE DEPARTMENT, Plaintiff,**

v.

**Gerald Joseph ROEDEL, Defendant.**

**In re Gerald Joseph ROEDEL, Debtor.**

**Civ. A. No. 83–807.**

United States District Court, D. New Jersey.

July 7, 1983.

Rody J. Costanza, Bayonne, N.J., for plaintiff.

Schwartz, Tobia & Stanziale by Raymond Lyons, East Orange, N.J., for defendant.

## OPINION

LACEY, District Judge.

Gerald Joseph Roedel, debtor, appeals from an order of the Bankruptcy Court dated January 18, 1983, determining that his debt to the Hudson County Welfare Department (HCWD) for alimony and child support is nondischargeable. The issue on appeal is whether the Bankruptcy Judge erred in applying the law in effect on the date of his decision, or whether the law in effect on another date, such as the date the debtor filed his bankruptcy petition, should govern.[1] Jurisdiction exists pursuant to section 405(c)(1)(C) of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, § 405(c)(1)(C), 92 Stat. 2649, 2686.[2]

## BACKGROUND

In July, 1979, the debtor and his wife, Dianna Roedel, entered into a separation agreement which provided, inter alia, that the debtor would pay his wife $150 per week for her support and the support of their two minor children. During 1980 and 1981, Mrs. Roedel received benefits from the Aid to Families with Dependent Children (AFDC) program; pursuant to section 402(a)(26) of the Social Security Act, 42 U.S.C. § 602(a)(26), she was required to assign her alimony and support rights to HCWD. The Roedels were divorced on November 21, 1980; the judgment of divorce ordered the debtor to pay the Hudson County Probation Office $150 per week for the support of his ex-wife and children.

On July 10, 1981, the debtor filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701–766. He did not list HCWD on his original schedule of creditors, although arrearages in the alimony and support payments amounted to

1. This is the only issue designated by the debtor in his notice of appeal. The HCWD, in its brief, raises an additional issue: whether the debtor's failure to include HCWD in his original list of creditors can be remedied by an amendment filed eight months after the original petition, and four months after the discharge in bankruptcy. See infra at 691–692.

2. Although the parties have not challenged either the bankruptcy court's or this court's subject matter jurisdiction, a few words about jurisdiction may be appropriate in light of the Supreme Court's recent decision in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which took effect on December 24, 1982, see —— U.S. ——, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982).

   In Northern Pipeline, the Court ruled that the broad grant of jurisdiction to bankruptcy judges in section 241(a) of the Bankruptcy Reform Act of 1978, 28 U.S.C. § 1471, is unconstitutional in that it vests Article III judicial power in bankruptcy judges who do not enjoy Article III's guarantees of life tenure and irreducible compensation. In response to this decision, the judges of this district promulgated Rule 47 of the General Rules of the United States District Court for the District of New Jersey (Local Rule 47), which provides that "all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11" are referred from the district court to the bankruptcy court. Local R. 47(b)(1). Thus the bankruptcy court's jurisdiction depends on the district court's jurisdiction. The Third Circuit recently upheld the use of Local Rule 47(c)(3) and held that the district court's jurisdiction over Title 11 cases survives Northern Pipeline. Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190 at 200–201 (3d Cir.1983). See also In re United Grocers Corp., 30 B.R. 46 (D.N.J.1983).

$5,450 as of that date.[3] On November 30, 1981, the debtor's discharge issued.

On December 16, 1981, the Hudson County Probation Department applied to the Superior Court of New Jersey, Chancery Division, to recover the delinquent payments. At the state court hearing, the debtor's counsel informed the court that Roedel had filed in bankruptcy and intended to amend his schedule of creditors to include HCWD. The state court hearing was adjourned pending the amendment.

On March 3, 1982, the debtor amended his schedules to add HCWD as an unsecured creditor. The Bankruptcy Court's order of that date provided for notice to HCWD and gave HCWD thirty days or "until the date specified in the Order and Notice for Meeting of Creditors filed herein, whichever last occurs," within which to file a complaint or proof of claim. On June 9, 1982, HCWD filed a complaint objecting to the claim, on the ground that the debt was not dischargeable under section 523(a)(5) of the Bankruptcy Code, 11 U.S.C. § 523(a)(5).[4]

Section 523 of the Bankruptcy Code as originally enacted provided:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge any individual debtor from any debt—

.    .    .    .    .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; [.]

This section was in effect on July 10, 1981, the date debtor filed his petition in bankruptcy. On August 13, 1981, however, section 523(a)(5) was amended by section 2334 of the Omnibus Budget Reconciliation Act of 1981, Pub.L. 97–35, 95 Stat. 357, 863, which reads in pertinent part:

(b) Section 523(a)(5)(A) of title 11, United States Code, is amended by inserting before the semicolon the following: "(other than debts assigned pursuant to section 402(a)(26) of the Social Security Act)".

(c) The amendments made by this section shall become effective on the date of the enactment of this Act.

This is the law which was in effect on the date of the debtor's discharge and on January 3, 1983, the date of the Bankruptcy Court's decision.

Bankruptcy Judge D. Joseph DeVito concluded that the later version of § 523(a)(5)(A) was controlling, and that the debtor's obligation to HCWD was therefore nondischargeable. Judge DeVito reasoned that, since the right to a discharge is not a property right and does not vest upon the filing of a petition for relief, there was no reason to apply the law of dischargeability as it existed at the time of filing. *In re Roedel,* 36 B.R. 4, 6 (Bkrtcy.D.N.J.1983).

## DISCUSSION

As an initial matter, HCWD argues that the bankruptcy court erred in allowing the debtor to amend his schedule of creditors some four months after his discharge and eight months after his filing in bankruptcy. HCWD argues that the debtor has a responsibility to be diligent in filing his schedules pursuant to 11 U.S.C. § 521(1), that the debtor had actual knowledge of the debt to HCWD at the time of filing, and that as a matter of equity the bankruptcy court should have denied the right to amend.

---

**3.** Plaintiff was acting *pro se* when he filed his petition. The Superior Court of New Jersey assigned him an attorney when Hudson County Probation Department applied for enforcement of the support order, *see infra;* that attorney has represented him since that time.

**4.** Since plaintiff had already received his discharge, presumably the meeting of creditors would already have occurred, and HCWD would have had 30 days within which to file its complaint. The complaint was not filed within 30 days, but debtor has not raised this as an issue on appeal.

Even assuming that this issue is properly before this court on appeal,[5] the court is unable to decide it. Equitable determinations rest on factual findings; since the bankruptcy court did not make any findings of fact on this issue, this court is unable to review its decision. In view of the disposition of the issue raised by the debtor, however, *infra,* it is unnecessary to remand for further findings.

The principal issue is whether the bankruptcy court erred in applying § 523(a)(5)(A) as it existed on the date of his decision. The bankruptcy court relied, at least in part, on the "traditional view that the law to be applied in a nondischargeability action is the law in force at the time of decision, and not the law in effect at the time the petition is filed." *In re Roedel, supra,* at 6, citing *In re Spell,* 650 F.2d 375 (2d Cir.1981); *In re Blair,* 644 F.2d 69 (2d Cir.1980); *In re Carter,* 32 F.2d 186 (2d Cir.1929); *Royal Indemnity Co. v. Cooper,* 26 F.2d 585 (4th Cir. 1928); *Lockhart v. Edel,* 23 F.2d 912 (4th Cir.1928); *Matter of Sloss,* 192 F.Supp. 136 (S.D.N.Y.1961); *In re Leach,* 15 B.R. 1005, 8 B.C.D. 587, 589 (Bkrtcy.D.Conn.1981). While it is true that the Second Circuit, in *Spell, supra,* and *Blair, supra,* has clearly adopted the "traditional view" expressed in the older cases, recent cases in the district and bankruptcy courts of other circuits have shown no consistent pattern. Some have concluded that the law as of the date of discharge should apply. *E.g., In re Kuehndorf,* 24 B.R. 555 (W.D.Wis.1982) (§ 523(a)(5)(A) case); *In re Payton,* 4 B.C.D. 976 (Bkrtcy.E.D.Pa.1978) (student loan debt nondischargeability case.) The greater number have held that the law as of the date of filing should govern. *E.g., In re Morris,* 21 B.R. 816 (Bkrtcy.N.D.Iowa 1982); *Matter of Reynolds,* 26 B.R. 181 (D.Idaho 1982); *In re Ahrendt,* 28 B.R. 329 (Bkrtcy.E.D.Wis.1983); *In re Ware,* 21 B.R. 880 (Bkrtcy.N.D.Iowa 1982); *Matter of*

*Flamini,* 19 B.R. 303 (Bkrtcy.E.D.Mich. 1982); *Heldt v. South Dakota,* 17 B.R. 519 (Bkrtcy.D.S.D.1982) (all § 523(a)(5)(A) cases). For the reasons stated below, however, this court believes that the cases which hold that the law as of the date of discharge should apply are correct. The proper analysis is that used by the district court in *Kuehndorf, supra,* 24 B.R. 555, which based its opinion on *Bradley v. School Board of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

*Bradley* sets out the principle that a court must apply the law in effect at the time it renders its decision, "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 U.S. at 711, 94 S.Ct. at 2016. *See Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); *Sikora v. American Can Co.,* 622 F.2d 1116, 1120 (3d Cir.1980); *Yakim v. Califano,* 587 F.2d 149, 150 (3d Cir.1978). In this case, both the language of the statute and its legislative history indicate that Congress intended the amended § 523(a)(5)(A) to take effect immediately. Section 2334(c) of the Omnibus Budget Reconciliation Act of 1981, Pub.L. 97–35, 95 Stat. 357, 863, clearly states that the amendment "shall become effective upon enactment." The House Conference Report on the Omnibus Budget Reconciliation Act makes the same statement. H.R.Rep. No. 208, 97th Cong., 1st Sess. 986, *reprinted in* 1981 U.S.Code Cong. & Ad.News 1010, 1348. Congress could have provided that the amendment would not apply to pending cases, if it had wanted to do so.[6] The one other court which has considered this issue in light of *Bradley* has reached the same conclusion. *Kuehndorf, supra,* 24 B.R. at 556. *But cf. Matter of Bruce,* 3 B.R. 77 (Bkrtcy.N.D.Ill.1980) (student loan case, concluding that because Congress used the date of commencement of a case whenever

---

**5.** This issue was argued before the bankruptcy judge, although his opinion does not discuss it. It is not included in the debtor's designation of issues on appeal, and HCWD made no attempt to amend the designation of issues.

**6.** Indeed, other provisions of the Bankruptcy Code specify that the Code will not apply to cases commenced before date of enactment. *E.g.,* 11 U.S.C. § 403(a).

it did specify that the law in effect on date of decision shall not control, the law in effect on date of filing controls discharge-ability where Congress has specified no date).

■ The other issue for resolution, under *Bradley,* is whether application of the law in effect on the date of decision will result in "manifest injustice." In making this assessment, the court should consider three factors: (1) the nature and identity of the parties; (2) the nature of the rights affected; and (3) the impact of the change in law on pre-existing rights. *Bradley, supra,* 416 U.S. at 717, 94 S.Ct. at 2019.

In *Bradley,* the fact that the plaintiffs were students litigating a school desegregation case made their case very different from "a routine private lawsuit." *Id.* at 718, 94 S.Ct. at 2019. The present case, on the other hand, is more similar to a "routine private" dispute; although a local government unit is involved, the case's only immediate impact will be on the debtor himself and on the Hudson County fisc.

■ As for the rights affected, the bankruptcy court correctly determined that the debtor has no property right to discharge of his alimony and child support debt. He obtained his discharge on November 30, 1981, under 11 U.S.C. § 727(a). Section 727(b) provides that,

> *[e]xcept as provided in § 523 of this title,* a discharge under subsection (a) of this section discharges the debtor from all debts that arose from the date of the order for relief [i.e., the petition in bankruptcy] under this chapter ...

11 U.S.C. § 727(b) (emphasis added). Thus, the debtor receives a discharge of his obligations only to the extent allowed by § 523; and on November 30, 1981, § 523(a)(5)(A) did not allow discharge of his debt to HCWD. If the amendment had occurred between the discharge and the decision on HCWD's complaint, manifest injustice might well have resulted from its application. In this case, however, the law in

effect on the date of the bankruptcy court's decision was the same as on the date of discharge.[7]

Perhaps the most influential of the opinions holding that the law of the date of filing should control is *Matter of Flamini, supra,* 19 B.R. 303. The court reached that result at least in part because of the debtor's reliance on the law at time of filing. It stated:

> It must be presumed that a decision to begin a bankruptcy proceeding is not made lightly. The decision to file a petition is reached by a debtor after consultation with his attorney as to the advantages and disadvantages of such action. The single most important factor in this decision is the scope of the discharge: which of the debtor's obligations will be dischargeable and which will have to be paid. The right to a discharge and the right of a discharge of any individual debt are important substantive rights conferred by the Bankruptcy Code ... Absent any express indication that Congress intended the August 13th amendment [to § 523(a)(5)(A)] to apply retroactively, the reasonable expectations of debtors who acted in reliance on existing legislation should not be frustrated.

*Id.* at 306–07. *Flamini's* reasoning was adopted by the courts in *Matter of Reynolds, supra,* 26 B.R. 181; *Ahrendt, supra,* 28 B.R. 329; *Ware, supra,* 21 B.R. 880, *Morris, supra,* 21 B.R. 816; and *Heldt, supra,* 17 B.R. 519. *Ahrendt* and *Heldt,* along with *Matter of Hazen,* 19 B.R. 545 (Bkrtcy.D.Idaho 1982), *aff'd sub nom. Matter of Reynolds, supra,* all emphasize the importance of the filing date in the bankruptcy scheme. *Hazen,* for example, states that filing operates as an application for discharge, which the court must grant unless objection is timely made. 19 B.R. at 548; *see* 11 U.S.C. §§ 301, 727(a). *Ahrendt* and *Heldt* point out that filing activates an automatic stay pursuant to 11 U.S.C. § 362(a) and that filing marks the date of division between bankruptcy and non-bankruptcy assets,

---

7. Section 523(a)(5)(A) has not been amended since the date of the bankruptcy court's deci-

sion; thus there is no problem as to which law to apply on this appeal.

since a discharge releases the debtor from all dischargeable obligations incurred before the filing date. *Ahrendt, supra,* 28 B.R. at 331; *Heldt, supra,* 17 B.R. at 521. *See also Bruce, supra,* 3 B.R. at 88 (listing ways in which filing date is used as a guidepost).

■ This court, however, cannot agree that the debtor has a right to a discharge under the law as it existed at the time of filing. It is well settled that a debtor has no constitutional right to a discharge in bankruptcy. *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1973). *A fortiori,* he has no right to discharge of a specific obligation. A discharge in bankruptcy is a legislatively created benefit; Congress may grant it on conditions, and could withhold it altogether if it chose. *Kras, supra,* 409 U.S. at 447, 93 S.Ct. at 639. Since the right to discharge is entirely a creation of statute, a debtor who has not yet received his discharge under the statute has no vested right in having the law remain as it was at the time he filed his petition. *Carter, supra,* 32 F.2d 186 (2d Cir.1929); *Royal Indemnity Co., supra,* 26 F.2d 585; *Lockhart, supra,* 23 F.2d 912; *In re Seaholm,* 136 F. 144 (1st Cir.1905); *Sloss, supra,* 192 F.Supp. 136; *Payton, supra,* 4 B.C.D. 976. It may be true, as the *Flamini* court recognized, that the debtor decides to file his petition based on the law as it stands at the time.[8] He may well hope that the law will not change before he receives a discharge, but his hopes alone do not create a right.[9] Nor does the statutory scheme do

so. The fact remains that a bankruptcy petition is not a discharge; it is an application for discharge of all debts which are dischargeable. *In re Leach, supra,* 15 B.R. at 1007; 11 U.S.C. § 727(b). The automatic stay merely freezes the rights of debtor and creditors, maintaining the status quo until the debtor's discharge. Even if the grant of the discharge itself is nearly automatic, the content of the discharge—*i.e.,* the determination as to dischargeability of each of the debts listed on the debtor's schedules—is governed by the law on the date of discharge.

*Flamini* and its progeny also suggest that the amended § 523(a)(5)(A) would be retroactive if applied to debtors who had commenced their cases, but not received discharges, before the effective date of the amendment. That conclusion depends on the premise that a debtor's right to a discharge vests when he files his petition in bankruptcy. This court, however, believes that a debtor's rights do not vest until the date of discharge. *Supra* at 693–694. Proceeding from this premise, the court concludes that the amended § 523(a)(5)(A) does not operate retroactively. Since it became effective on the date it was enacted, did not affect debtors who had already received discharges. And since a debtor's rights do not become fixed until the date of discharge, the amendment did not interfere with any "antecedent rights" of debtors such as Mr. Roedel, who had filed in bankruptcy but had not received a discharge before its effective date.[10]

---

**8.** The court notes that the debtor apparently did not rely on the existing § 523(a)(5)(A) when he filed his petition, since he did not list HCWD on his schedule of creditors at that time.

**9.** The debtor's situation is no different from that of many other people who undertake important decisions in reliance on existing law, only to have the law change *in medias res.* A plaintiff may commence a civil suit in reliance on existing law; he may even obtain a temporary restraining order or preliminary injunction (analogous to the stay under 11 U.S.C. § 362(a)), based on his likelihood of success under that law. If the law changes after he files his complaint but before the ultimate reso-

lution of the case, however, it is the new law which governs the adjudication of the parties' rights (subject, of course, to the *Bradley* criteria, *supra* at 692–693).

**10.** Assuming *arguendo* that a debtor's rights were fixed at the time he filed his petition, the mere fact that the law affected those rights adversely would not make it unconstitutionally retroactive. Bankruptcy law is a classic example of economic regulation. *In re Ashe,* 669 F.2d 105, 110 (3d Cir.1982). It is well settled that "legislative acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality and that the burden is on one complaining of a due process violation to establish that the legisla-

*Flamini* and some of its progeny also point out that, under Bankruptcy Rule 409(a), a complaint to determine dischargeability of a debt may (with certain exceptions not relevant here) be brought at any time. They raise the specter that "all cases would essentially remain open and the rights of the parties remain subject to change," *Hazen, supra,* 19 B.R. at 548, since a creditor could file a complaint whenever the law of dischargeability changed. This possibility would arise if a court automatically applied the law in effect on the date it decided the merits of the creditor's complaint. Under the *Bradley* analysis, however, a court would be much more likely to conclude that the law in effect on the date of discharge should apply to subsequent complaints, as the discharge fixes the rights of the parties and it would be manifestly unjust to render those rights subject to change with every change in the law. The date of discharge would thus provide a convenient, easily ascertainable reference date; the rights of the parties would not remain "open and . . . subject to change," since all complaints would be decided under the law as it existed on that date.

Applying the law as it existed on the date of discharge does not solve the final problem raised by *Ahrendt, supra,* 28 B.R. at 332, and *Hazen, supra,* 19 B.R. at 548. These cases suggest that inequity would result when two debtors who file similar petitions on the same day obtain their discharges on different days, one before and one after the effective date of § 523(a)(5)(A), since the former would receive a discharge of his alimony and child support debt, while the latter would not. As *Ahrendt* stated,

> [The date of discharge] can vary widely, even with respect to two bankruptcy cases that were filed at the same time. It is not uncommon for trustees or creditors, pending receipt of requested information from the debtor and often by agreement with the debtor, to obtain extensions of time for filing objections to discharge and thereby delay the entry of discharge. Should the principles and rules dealing with such extensions of time in effect become the determining factor in whether or not a particular debt is to be discharged? Where there is delay in debtor-creditor negotiations regarding the possible reaffirmation of a debt, the parties often request that the entry of the discharge be delayed in order for them to comply with the requirements of § 524(c)(1). Record numbers of bankruptcy cases are being filed at present, one effect being a resultant delay in the trial of cases, including those involving objections to discharge. Should the progress in negotiating the reaffirmation of a totally unrelated debt, or the state of the court's calendar, in effect determine the date of applicable dischargeability law? Clearly the rights of the parties ought not to be determined by such fortuitous circumstances as these.

28 B.R. at 332. The two hypothetical debtors, however, are in the same position as two civil plaintiffs who file similar cases on the same day. If one goes to trial before the other, his rights are adjudicated under the law as it then exists. If the second case is delayed because of settlement negotiations, the state of the court's calendar, or any other reason, and the law changes in the interim, the second plaintiff's rights are governed by the new law. There is nothing inherently unfair about this. While consistency in adjudication is certainly a laudable goal, it is impossible ever to achieve per-

---

ture has acted in an arbitrary and irrational way." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). *See, e.g., Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *In re Ashe, supra,* 669 F.2d at 110. Such a burden is difficult to meet. The nature of the plaintiff's right is only one factor to be assessed; a court must also consider the nature and strength of the public interest served by

the legislation, and the extent to which the legislation impairs the asserted public interest. *St. Mary of Nazareth Hosp. Center v. Dep't of Health & Human Services,* 698 F.2d 1337, 1345 (7th Cir.1983). In this case, the amended § 523(a)(5)(A) serves the public's interest in conserving the resources of the public treasury and does not greatly impair the debtor's right to a discharge, since it only denies discharge of one particular type of debt.

**696**

fectly. Congress and the courts must draw the line somewhere. In this case, the court is convinced that Congress intended to draw the line at August 13, 1981, and to apply the amended § 523(a)(5)(A) to all debtors who had not received discharges as of that date.

CONCLUSION

In summary, the court finds that application of the amended § 523(a)(5)(A) to determine the dischargeability of the debtor's obligation to HCWD does not result in manifest injustice. In addition, the statute and its legislative history indicate that Congress intended the amendment to become effective on the date of its enactment. Since the debtor did not receive his discharge until after that date, the bankruptcy court's application of the amended § 523(a)(5)(A) to determine dischargeability was proper under *Bradley v. School Board of Richmond, supra,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476. Under the amended § 523(a)(5)(A), the debt to HCWD for alimony and child support is nondischargeable. The order of the bankruptcy court is affirmed.