**UNITED STATES of America, etc., Appellant,**

v.

**Ronald C. RICE, Appellee/Cross Appellant.**

**No. 3:93CV7488.**

United States District Court, N.D. Ohio, Western Division.

Aug. 31, 1994.

**760**

Holly Taft Sydlow, Office of U.S. Atty., Toledo, OH, for appellant.

Gordon R. Barry, Barry & Feit, Toledo, OH, for appellee.

### OPINION AND ORDER

JOHN W. POTTER, Senior District Judge.

This matter is before the Court on appeal from the final order of the United States Bankruptcy Court pursuant to 28 U.S.C. § 158(a). Appellee, a debtor who had previously been granted Chapter 7 relief, filed a complaint to determine dischargeability of certain student loans in the bankruptcy court. The parties filed cross motions for summary judgment. On August 19, 1993 Judge Richard L. Speer granted in part each of the cross motions for summary judgment. Each of the parties filed a notice of appeal from that order.

This Court reviews the bankruptcy court's decision granting summary judgment de novo. *In re Batie,* 995 F.2d 85, 88–89 (6th Cir.1993). The uncontroverted facts in the record in this case reflect that appellee executed two $10,000.00 notes while he was enrolled in medical school. He left medical school for academic reasons in the fall of 1981, during his third year. He never completed medical school. The student loans at issue are Health Education Assistance Loan (HEAL) obligations.

Repayment was scheduled to begin in October of 1983; however, appellee did not make the scheduled payments on the HEAL loans as they became due and interest on the loans continued to accrue. On December 19, 1989, a judgment was entered in favor of appellant on the obligation in the amount of $60,526.92 plus interest and costs. When appellee filed his complaint to determine dischargeability in 1992, the amount of appellee's indebtedness had increased to $77,694.46. As of that time, a total of only $1,604.39 had been collected on the debt.

■ Appellee urged the bankruptcy court to apply 11 U.S.C. § 523(a)(8)(B), the bankruptcy provision relating to student loans in general, to determine the dischargeability of the HEAL obligation at issue in this case. The bankruptcy court properly determined, however, that the dischargeability of these loans is governed by 42 U.S.C. 292f(g)[1],

---

1. The bankruptcy court actually applied § 294f(g). However, as the parties observe, this section has been redesignated as § 292f(g). This Court's reference to § 292f(g) is therefore identical to the bankruptcy court's reference to § 294f(g).

which specifically addresses health profession loans. *See In re Cleveland*, 89 B.R. 69 (9th Cir. BAP 1988); *United States v. Wood*, 925 F.2d 1580 (7th Cir.1991).

■ The court then considered whether appellee satisfied the discharge provisions contained in § 292f(g). Although the statute lists three conditions which must be satisfied for the discharge of a HEAL obligation, only one of those conditions is contested in the instant case. The pertinent language of the statute provides that:

> A debt which is a loan insured under the authority of this subpart may be released by a discharge in bankruptcy under any chapter of Title 11, only if such discharge is granted ...

> .    .    .    .    .

> (2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable....

42 U.S.C. § 292f(g). Although the statute does not define the term "unconscionable," the bankruptcy court relied upon well-settled authority directing that unconscionability poses a significantly more burdensome standard than the "undue hardship" standard set forth in 11 U.S.C. § 523(a)(8)(B), the general student loan discharge provision. *See, In re Hines*, 63 B.R. 731, 736 (Bankr.D.S.D.1986) (unconscionability is that which is "lying outside the limits of what is reasonable or acceptable, or shockingly unfair, harsh or unjust"); *In re Green*, 82 B.R. 955 (Bankr. N.D.Ill.1988); *In re Emnett*, 127 B.R. 599 (Bankr.E.D.Ky.1991).

The bankruptcy court applied a three-prong analysis, which has been used to determine whether the undue hardship standard has been met, to the instant facts.[2] This analysis consists of a mechanical test, a good faith test, and a policy test. *See In re Johnson*, 5 Bankr.Ct.Dec. 532, 539–45 (Bankr. E.D.Pa.1979). The court found that upon the uncontroverted record before it, appellee failed to demonstrate even undue hardship, a lesser standard than unconscionability. As Judge Speer explained:

With the plaintiff having failed to meet the requirements of any of the three (3) tests, this Court can find no justification for granting the Plaintiff's Petition for discharge of his HEAL obligations. It strikes the Court that the primary hardship facing the Plaintiff is one which has been self imposed; had the Plaintiff begun to repay the loans in a timely manner, or worked out some sort of payment plan with the Creditor, perhaps he would not currently be facing such an oppressive amount of debt. Rather than take any affirmative action, the Plaintiff has allowed these debts to languish, unpaid, for almost a decade. Such a course of action should not be encouraged, ratified or rewarded.

Mem.Op. and Order at p. 10.

In determining whether nondischarge of a debt would be unconscionable, rather than applying the undue hardship tests employed by the bankruptcy court below, other courts have considered a list of factors, which includes the debtor's:

1.  income,
2.  earning ability,
3.  health,
4.  educational background,
5.  dependents,
6.  age,
7.  accumulated wealth, and
8.  professional degree.

*In re Emnett*, 127 B.R. at 603 (citing *In re Quinn*, 102 B.R. 865, 867 (Bankr.M.D.Fla. 1989)).

The factual stipulation filed by the parties reflects that appellee is 39 years old and is currently employed by the Toledo Public Schools as a teacher earning $2,937.78 per month. His wife is employed as an administrator at Bowling Green State University, earning $2,083.33. Appellee and his wife have three children and neither appellee, his wife, nor any of the children have any major health problems. The couple has some equity in a modest home, and they own a 1976 Dodge.

---

**2.** The court properly relied upon the uncontroverted facts contained in the record and in a factual stipulation filed by the parties.

Upon a de novo review of the record in this case, the Court concurs with the bankruptcy court's initial determination that appellee has failed to demonstrate that nondischarge of the debt would be unconscionable.

■ After determining that appellee could not demonstrate undue hardship, let alone unconscionability, the bankruptcy court invoked its purported equitable power to reduce the amount of the HEAL debt which is nondischargeable to $27,500.00, "a level which will not inflict unconscionable hardship upon his dependents." This Court finds that this action is in contravention of the controlling statutory provision and is not supported by the record in this case.

■ Rather, the inescapable conclusion, given the strict standard for determining dischargeability contained in § 292f(g) and the cases which have interpreted that provision, is that nondischarge of the HEAL obligation in this case would not be unconscionable and that, pursuant to § 292f(g), the entire amount is nondischargeable. The bankruptcy court acted beyond its authority when, after making the determination that nondischarge was not unconscionable, it nevertheless reduced the amount of the nondischargeable obligation. To the extent that discharge of a HEAL obligation is anything other than an "all or nothing" proposition, any reduction in the amount of nondischargeable debt must certainly be preceded by a finding of unconscionability under § 292f(g), and not in spite of a finding that unconscionability has not been demonstrated.

■ Appellee also asserts that the application of 42 § 292f(g), as opposed to 11 U.S.C. 523(a)(8)(B), amounts to a violation of Fifth Amendment due process. Essentially, the argument is that since the provision in Title 42 was not in existence at the time appellee entered into the HEAL obligation, he is deprived of due process by its application at this juncture. By way of background, there was a provision in Title 42 prior to 1979 pertaining to discharge in bankruptcy of loans guaranteed under that Title. As Judge Speer explained:

[S]ection 294 was in existence prior to 1979, but was repealed until 1981, when it

was reinstated with even more stringent provisions than had previously existed. Plaintiff asserts that since his debts were incurred during this "down time", when only Section [523] was on the books, that Section [523] should apply to his loans. This Court disagrees. *In re Hampton* [47 B.R. 47 (Bankr.N.D.Ill.1985)] addressed this question directly. The petitioner in *Hampton* was a Chapter 7 debtor who had taken out a HEAL loan in 1980, during the same "down time" as the Plaintiff in this case. The petitioner in *Hampton* argued that to apply the more stringent statute retroactively would be a violation of his Fifth Amendment due process rights. The Court stated that there existed no property right in the right to a bankruptcy discharge provision of a contract, and that this or any discharge in bankruptcy was a statutory privilege granted by Congress pursuant to its Article I, Section 8, Clause 4, powers. The Court concluded that 42 U.S.C. 294f(g) was the controlling provision, and this Court reaches the same conclusion.

Mem.Op. and Order at p. 5.

This Court concurs in the resolution of this issue by the bankruptcy court. The application of § 292f(g) to appellee's HEAL loan is not violative of any protected property interest.

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that the order of the bankruptcy court be, and hereby is, REVERSED to the extent that it modified or reduced appellee's HEAL obligation and AFFIRMED in all other respects.