In re Foster J. GIBBONS, Debtor.

**Louise M. Smith, individually and as beneficiary of Louise M. Smith, IRA, Plaintiff,**

v.

**Foster J. Gibbons, Defendant.**

Bankruptcy No. 01–13915 (ALG).
Adversary No. 01–8150 (ALG).

United States Bankruptcy Court,
S.D. New York.

March 7, 2003.

LLP, New York City, for Debtor/Defendant.

### MEMORANDUM OF DECISION

ALLAN L. GROPPER, Bankruptcy Judge.

The Plaintiff has moved for summary judgment on her complaint to declare nondischargeable a judgment enforcing an arbitral award issued in her favor and against the Debtor by the National Association of Securities Dealers, Office of Dispute Resolution (NASD–DR). The Debtor previously filed a motion to dismiss the Plaintiff's amended adversary complaint, arguing principally that the arbitration award was not preclusive and that the allegations in the complaint were not sufficient to state a claim under §§ 523(a)(2)(A), (a)(4) or (a)(6) of the Bankruptcy Code (the "Code"). In a decision dated July 24, 2002, the Court denied the motion to dismiss and found that the complaint was adequate under all three subsections of § 523(a).

The Plaintiff has followed up with the instant motion for summary judgment, asserting that the issues necessarily decided by the arbitrators are also sufficient to form the basis for a finding that the award is preclusive as to nondischargeability under §§ 523(a)(2)(A) and (a)(6).[1] The Plaintiff also invokes a new section of the Bankruptcy Code, 11 U.S.C. § 523(a)(19), enacted on July 30, 2002 as part of the Sarbanes–Oxley Act of 2002. Section 523(a)(19) renders nondischargeable a debt that results from a judgment for a violation of any federal or state securities law or for common law fraud, deceit or manipulation in connection with the purchase or sale of any security. The Plaintiff contends that the new subsection is remedial legislation that was specifically

Dayton Haigney, New York City, for Plaintiff.

Richard Weltman, Michael Moskowitz, Michele K. Jaspan, Weltman & Moskowitz,

1. Section 523(a)(4) is not relied on in connection with the instant motion.

intended to apply in pending bankruptcy cases such as this one. The Debtor opposes the "retroactive" application of § 523(a)(19) in this Chapter 7 proceeding, as it was initially filed on July 11, 2001, and he received a general discharge of his other debts on October 5, 2001. He further argues that the default arbitration award is not preclusive on all issues that must be determined in order for an award to be nondischargeable under §§ 523(a)(2)(A) and (a)(6).

If § 523(a)(19) applies in the instant case, it unquestionably renders nondischargeable the Plaintiff's debt, as the debt is based on a judgment enforcing an arbitral award for common law securities fraud. For the reasons set forth below, the Court holds that § 523(a)(19) does apply in this case and that the debt is nondischargeable. In light of the Court's ruling, it is unnecessary to decide whether the award is also preclusive under §§ 523(a)(2)(A) or (a)(6).

### FACTS

The facts alleged in the complaint are set forth in some detail in the Court's prior decision. The facts necessary to the determination of this motion are few. In her statement of uncontested facts pursuant to Local Rule 7056–1, Plaintiff alleges that in July 1997 she was 73 years old, recently widowed, and planned to retire. She had a brokerage account at J.P. Gibbons & Co., Inc., and in less than two years over $1.5

million in securities were purchased for her account, during which time the average equity in the account was $28,762. In order to break even after commissions and trading costs, the account would have had to earn 81% annually. It did not, and she lost her entire investment.

Foster Gibbons was chief legal and compliance officer at J.P. Gibbons and was one of several respondents named in a "Statement of Claim and Demand for Arbitration," dated September 21, 1999, in which the Plaintiff charged the respondents with violations of the securities laws and fraud, deceit, negligence and breach of fiduciary duty in connection with the trading in her account.[2] The Debtor received a notice of Plaintiff's claim in October 1999 and filed an answer on January 19, 2000. He later defaulted.[3] On November 6, 2000, the arbitration panel issued an award (the "Award") in favor of the Plaintiff, finding that the Debtor and certain other respondents, including The Golden Lender Financial Group, Inc. n/k/a J.P. Gibbons & Co., Inc., Roman Sakharovich, Alexander Bienenstock, Kenneth R. Lauher, Tomer M. Yuzary, Earl J. Swan III, Richard O. Freedman, and Aron O. Bronstein committed common law fraud. The Debtor and some of the other respondents were found to be jointly and severally liable to the Plaintiff in the following sums:

I. $126,298.00 in compensatory damages;

---

2. The caption listing all of the respondents in the NASD arbitration is as follows: Louise M. Smith, IRA, Claimant v. The Golden, Lender Financial Group, Inc. n/k/a J.P. Gibbons & Co., Inc., Roman Sakharovich, Konstantin Tokar, Foster J. Gibbons, Alexander Bienenstock, Kenneth R. Lauher, Maroun D. Mansour, Tomer M. Yuzary, Earl J. Swan III, Richard O. Freedman, George C. Danas a/k/a George C. Damas, Aron O. Bronstein, and Andrew Reegen. Several of the respondents, but not the Debtor, have apparently been con-

victed for securities fraud in connection with the activities of J.P. Gibbons & Co., Inc.

3. The Debtor contends that he left J.P. Gibbons in March 2000 and that although the firm filed a notice of his departure with the NASD, the NASD continued to serve him at his former employer's address, and he did not receive notice of subsequent proceedings in the arbitration.

II. $150,000.00 in punitive damages pursuant to California Civil Code § 3294;

III. $ 1,500.00 in expert witness fees;

IV. $110,519.20, as 40% of items [I and II] above, as attorney's fees pursuant to California Welfare and Institutions Code §§ 15610.30 and 15657.

On February 16, 2001, the Debtor moved to vacate the Award before the United States District Court for the Southern District of New York, arguing that he was deprived of his right to due process because he did not receive proper notice of the proceedings. Plaintiff cross-moved to confirm the Award. The Award was confirmed, on March 22, 2002, by District Judge Preska, who ruled that due process was satisfied in all respects. *Gibbons v. Smith,* Case No. 01 Civ. 1224(LAP)(Order of 3/22/02). The Debtor has appealed that order to the Second Circuit.[4]

In his counsel's statement of Contested Facts and his counsel's papers in opposition to the Plaintiff's motion for summary judgment, the Debtor claims to have no knowledge of Plaintiff or her investment account at J.P. Gibbons and "no recollection that Smith ever complained directly to him about the failure of her brokers to sell securities in her account." (Statement of Contested Facts ¶ 3.) He does not deny that he was the chief legal and compliance officer and later president of the firm. Through his counsel he takes issue with certain of the facts alleged by the Plaintiff and alleged inconsistencies between the Plaintiff's present position and the position she took in her Statement of Claim initiating the arbitration. For purposes of this decision, however, it is only necessary to

find that the Plaintiff's debt is based on a judgment confirming an award for damages for fraud in connection with the purchase and sale of securities.

## THE APPLICABILITY OF SECTION 523(a)(19)

### The Sarbanes–Oxley Act of 2002

Section § 523(a)(19) was adopted as part of the Sarbanes–Oxley Act, which has been described as a means to "[a]ddress systemic and structural weaknesses ... revealed in ... a breakdown in corporate financial and broker-dealer responsibility."[5] Its stated purpose is "[T]o protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to the securities laws, and for other purposes." Pub.L. No. 107–204, 116 Stat. 745 (2002). The various provisions of the Act institute major changes in accounting practices, the oversight of companies, corporate governance and executive responsibility.

Title VIII of the Sarbanes–Oxley Act of 2002 is entitled "The Corporate and Criminal Fraud Accountability Act of 2002" (the "Accountability Act"). The Accountability Act was authored by Senate Judiciary Chairman Patrick Leahy, and introduced by Senator Leahy and others on March 12, 2002. S.Rep. No. 107–146, at 2 (2002). The purpose of the Accountability Act is:

"To provide for criminal prosecution and enhanced penalties of persons who defraud investors in publicly traded securities or alter or destroy evidence in certain Federal investigations, *to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy,* to protect whistleblowers who report fraud against retaliation by

4. The Debtor also filed a motion for a stay of proceedings herein based on the pendency of this appeal, which was denied.

5. 148 Cong. Rec. S6327 (daily ed. July 8, 2002)(statement of Senator Sarbanes).

their employers, and for other purposes." (emphasis added).

S.Rep. No. 107–146, at 2 (2002). Section 803 of the Accountability Act, titled "Debts nondischargeable if incurred in violation of securities fraud laws," added subsection (19) to the exceptions to discharge enumerated in § 523(a) of the Bankruptcy Code. It provides that a discharge in a Chapter 7 case (among others) does not discharge an individual debtor from a debt . . .

(19) that—

(A) is for—

(i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) that results from—

(i) any judgment, order, consent order or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

The section, by its terms, applies to both statutory claims under the securities laws and common law fraud, so long as it arises in connection with the purchase or sale of a security.[6]

Section 523(a)(19) was added to "[a]mend the Bankruptcy Code to make judgments and settlements based upon securities law violations non-dischargeable, protecting victims' ability to recover their losses." 148 Cong. Rec. S1787 (daily ed. March 12, 2002)(statement of Senator Leahy); *see also* S.Rep. No. 107–146 (2002). The Committee Report states:

> Current bankruptcy law may permit such wrongdoers to discharge their obligations under court judgments or settlements based on securities fraud and other securities violations. This *loophole* in the law should be closed to help defrauded investors recoup their losses and to hold accountable those who violate securities laws after a government unit or private suit results in a judgment or settlement against the wrongdoer.

*See* S.Rep. No. 107–146 (2002). Congress also recognized another problem faced by defrauded investors. "Under current laws, State regulators are often forced to 'reprove' their fraud cases in bankruptcy court to prevent discharge because remedial statutes often have different technical elements than the analogous common law causes of action . . . State regulators have to plow the same ground twice in securities fraud cases." *See* S.Rep. No. 107–146 (2002).[7]

---

**6.** Section 523(a)(19) incorporates by reference § 3(a)(47) of the Securities Exchange Act of 1934, which defines "securities laws" to mean the Securities Act of 1933, the Securities Exchange Act of 1934, the Public Utility Holding Company Act of 1935, the Trust Indenture Act of 1939, the Investment Company Act of 1940, the Investment Advisers Act of 1940 and the Securities Investor Protection Act of 1970.

**7.** In addition to Senator Leahy's statement on this issue, the legislative history also includes a letter from the North American Securities Administrators Association (NASAA), in support of § 523(a)(19), chronicling the problems State regulators often have with securities

The legislative history also demonstrates an intention to apply § 523(a)(19) as broadly as possible in pending bankruptcy cases. Senator Leahy stated, as part of his section-by-section analysis of the bill:

> This provision [§ 523(a)(19)] is meant to prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible. *To the maximum extent possible, this provision should be applied to existing bankruptcies.* The provision applies to all judgments and settlements arising from state and federal securities laws violations entered in the future regardless of when the case was filed.

148 CONG. REC. S7418 (daily ed. July 26, 2002)(statement of Senator Leahy)(emphasis added).[8] The section-by-section analysis was adopted as legislative history for the Accountability Act "in order to provide guidance in the legal interpretation of these provisions of Title VIII of H.R. 2673." *Id.* Nothing in the legislative history indicates that § 523(a)(19) should not apply in all existing bankruptcies.

*The Landgraf Case*

■ Subject to constitutional limits, it is beyond dispute that Congress has the power to enact laws with retroactive effect. *See INS v. St. Cyr,* 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), quoting *Landgraf v. USI Film Prod.,* 511 U.S. 244, 268, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *Landgraf* is the controlling case at present on the retroactive application of

legislation. In *Landgraf,* the Supreme Court addressed the "apparent tension" between two different canons of statutory construction. The first is the rule that "a court is to apply the law in effect at the time it renders its decision." *See Bradley v. School Bd. Of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). The second is the axiom that "[r]etroactivity is not favored in the law," and its interpretative corollary that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *See Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).

■ The Court articulated a two-part test to determine whether a law should apply to conduct occurring prior to the law's enactment. A court must, first, establish whether Congress "expressly prescribed the statute's proper reach," and if it did not, then determine whether application of the statute to prior conduct "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. If the statute would impair rights or increase liability—in the Court's words, "have retroactive effect"—the "traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result." *Id.*

■ Under the first test, where Congress has clearly indicated the temporal

---

fraud cases in that they may have to "reprove" their cases in bankruptcy court, and that settlements may not have the same collateral estoppel effect as judgments obtained through fully litigated legal proceedings. As demonstrated by the present case, and many of the decisions in this Court's prior opinion, this has been a pervasive issue in bankruptcy cases.

**8.** As is evident in the last sentence, the statute was also intended to apply where the securities fraud action had been commenced prior to adoption of the statute but was still pending on the date of enactment.

reach of an amended statute, and absent a Constitutional prohibition, that expression of legislative intent must be given effect.[9] As the Supreme Court put it, "Requiring clear intent assures that the Congress itself has considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." *Id.* at 272–73, 114 S.Ct. 1483. The first question before this Court, then, is whether Congress has prescribed "with requisite clarity" that § 523(a)(19) should apply to prior conduct. *Martin v. Hadix*, 527 U.S. 343, 352, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). The first place to look for an answer to this question is, of course, the language of the statute itself. *Landgraf*, 511 U.S. at 249, 114 S.Ct. 1483; *see also Hughes Aircraft Company v. United States*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997); *Greyhound v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 98 S.Ct. 2370, 57 L.Ed.2d 239 (1978).

■ Section 523(a)(19) has no express direction as to its temporal application to prior conduct. All of Title VIII is made effective as of July 30, 2002. *See* Pub.L. No. 107–204, 116 Stat. 745 (2002). However, when Congress wanted to preclude a new provision of the Accountability Act from being applied to pending proceedings in court, it said so expressly. Section 804 of the Act extends the limitations period for commencing claims for fraud under the Federal securities laws, but it is specifically stated that the section is not applicable to actions pending on the date of enactment.[10] The fact that Congress has explicitly ruled that another section of a given statute not be applied in pending cases is evidence that Congress intended the remainder of the statute to apply thereto. *See St. Cyr*, 533 U.S. at 318–320, 121 S.Ct. 2271; *see also Matter of Busick*, 831 F.2d 745, 748 (7th Cir.1987)("Had Congress intended for the amendments to section 303 [of the Bankruptcy Code] to apply only to cases filed after their effective date, it seems reasonable to assume that Congress would have expressly stated so, as it did with the other amendments"), quoting *In re Stroop*, 47 B.R. 986, 987–88 (D.Colo. 1985).

Beyond the express words of the statute, the available legislative history indicates that § 523(a)(19) should be applied to prior conduct. The section-by-section analysis read into the *Congressional Record* states flatly that § 523(a)(19) should apply "to the maximum extent possible, to all existing bankruptcies." 148 CONG. REC. S7418 (daily ed. July 26, 2002)(statement of Senator Leahy). Courts frequently give substantial weight to a "section-by-section analysis" in determining legislative intent. *See Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 103 S.Ct. 2476, 76 L.Ed.2d 678 (1983); *United States v. Dinero Express, Inc.*, 313 F.3d 803 (2d Cir.2002); *Matter of Arbitration Between Chung and President Enterprises Corp.*, 943 F.2d 225 (2d Cir.1991).[11]

9. The Debtor has not cited, nor do there appear to be, any Constitutional prohibitions that preclude § 523(a)(19) from applying in this case.

10. With regard to an effective date for § 804, the statute reads, "The limitations period provided by section 1658(b) of title 28, United States Code, as added by this section, shall apply to all proceedings addressed by this section that are commenced on or after the date of enactment of this Act." Pub.L. No. 107–204, 116 Stat. 745, 801 (2002).

11. In *Landgraf*, the Supreme Court reviewed the floor debate, Committee Reports and the procedural history of an earlier attempt of Congress to enact similar legislation in order to discern legislative intent. Similarly, the Supreme Court has looked to accompanying legislative reports in other cases dealing with retroactivity of statutes. *See Rivers v. Road-*

Moreover, the purpose of the section-by-section analysis was "to provide guidance in the legal interpretation" of the Sarbanes–Oxley Act, and it was offered by Senator Leahy, the author of the Accountability Act and Senate Judiciary Committee Chairman at the time of the enactment of the legislation. 148 CONG. REC. S7418 (daily ed. July 26, 2002)(statement of Senator Leahy).[12] The Congressional intent that § 523(a)(19) apply in all pending bankruptcies is thus authoritative.

Therefore, the Court concludes, as is required under *Landgraf*, that Congress did consider retroactive application of § 523(a)(19) and determined that any potential unfairness was an acceptable price to pay for the countervailing benefits. This conclusion takes into account the legislative history, the context and purpose under which the Act and § 803 was enacted, § 804 (where Congress expressly declined to apply the statute retroactively), and the absence of any contradictory legislative history. Even if the Court were to assume, *arguendo*, that the application of § 523(a)(19) is prejudicial to a debtor, under *Landgraf*, this is not a sufficient basis on which to fail to give § 523(a)(19) its intended scope. Within the meaning of *Landgraf*, Congress has prescribed, with "requisite clarity," the temporal reach of § 523(a)(19).

■ In any event, assuming it appropriate to reach the second step of the *Landgraf* analysis, application of § 523(a)(19) in this case would not have an unfair "retroactive effect." *Landgraf* recognized that "[a] statute does not operate 'retrospec-tively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law." 511 U.S. at 269, 114 S.Ct. 1483 (internal citation omitted). Rather, the inquiry demands a "common-sense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.'" *Martin v. Hadix*, 527 U.S. 343, 357–58, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999), quoting *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483. In *St. Cyr*, the Supreme Court reiterated that "the judgment whether a particular statute acts retroactively 'should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.'" 533 U.S. at 321, 121 S.Ct. 2271, quoting *Martin*, 527 U.S. at 358, 119 S.Ct. 1998.

■ The question, then, is whether application of § 523(a)(19) in this case would impair a vested right or attach unfair legal consequences to the Debtor's conduct. It has long been the rule that "(t)he grounds which would bar a discharge (must be) determined by the law in force at the time the judge passed on the question of discharge." *In re Spell*, 650 F.2d 375, 376 (2d Cir.1981), quoting *In re Carter*, 32 F.2d 186, 188 (2d Cir.1929). In *Spell*, the Second Circuit held that the dischargeability of the debtor's child support obligation was governed by the law in effect when the bankruptcy judge determined the dischargeability of the debt (the new Bankruptcy Code), rather than the law in effect

---

*way Express*, 511 U.S. 298, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994)(floor debate); *INS v. St. Cyr*, 533 U.S. at 318–320, 121 S.Ct. 2271 (Conference Report and other parts of the statute).

**12.** A section-by-section analysis may not be as persuasive if it was introduced after the enactment of the legislation. In this case, however, the section-by-section analysis was offered into the *Congressional Record* as legislative history contemporaneously with the passage of the Sarbanes–Oxley Act of 2002, and without any objection.

on the earlier date when the debtor received a general discharge of his other debts (the prior Bankruptcy Act). In reaching this decision, the Court noted that the "[g]eneral principle that a court must apply the law that exists as of the date it renders its decision has been consistently applied in cases arising under the Bankruptcy Act." *In re Spell,* 650 F.2d at 377. *See also In re Blair,* 644 F.2d 69 (2d Cir.1980); *In re Carter,* 32 F.2d 186 (2d Cir.1929); *Royal Indemnity Co. v. Cooper,* 26 F.2d 585 (4th Cir.1928); *Lockhart v. Edel,* 23 F.2d 912 (4th Cir.1928); *In re Sloss,* 192 F.Supp. 136, 137 (S.D.N.Y. 1961)("[T]he law which governs is that which is in effect at the time the application for a discharge is passed upon, and not that which was in force when the petition in bankruptcy was filed.").

Authority under the Bankruptcy Code in the other Circuit Courts follows the same rule. In *Hudson County Welfare Dep't v. Roedel,* 34 B.R. 689 (D.N.J.1983), *aff'd,* 734 F.2d 5 (3rd Cir.1984), the Court held that the law in effect on the date of decision, not the law in effect at the time the petition was filed, should apply to a question of dischargeability in light of an amendment to § 523(a).[13] In *In re Reynolds,* 726 F.2d 1420 (9th Cir.1984), in applying another amendment to § 523(a) to prior conduct, the Court stressed that the right to relief from a debt is not a matured or unconditional property right until a final decision is made on dischargeability. In *Matter of Busick,* 831 F.2d 745 (7th Cir.1987), the Seventh Circuit similarly held that an amendment to § 303 of the Code applied to prior conduct. Stressing that a debtor

has no vested right to discharge at the time of his bankruptcy filing, the Court held the right accrues at the time the judge rules on the discharge, and any amendments to the dischargeability provisions in the interim are applied, absent "manifest injustice" to the parties.

In this case, there would be no such "manifest injustice." The Debtor acquired no vested right to the discharge of this debt. As Judge Weinfeld said in *In re Sloss,* 192 F.Supp. at 137, "The contention that [the debtor] had a vested right in the law as it was, either at the time of the filing of the petition in bankruptcy, or when she filed her specifications, is contrary to the authorities ..." Moreover, application of § 523(a)(19) attaches no new liability on the Debtor. The Award remains unchanged. Section 523(a)(19) makes it more difficult for persons who commit securities fraud to discharge their *current* liabilities. *Cf. Reynolds,* 726 F.2d at 1424. But Congress thought it more important to close a loophole in the law that in some cases prevented defrauded investors from recouping their losses or required them to prove their case all over again.

Nor does the application of § 523(a)(19) in this case implicate issues of fairness or notice. The Debtor does not argue that his conduct as a principal of the brokerage firm that bore his last name would have been any different had he known § 523(a)(19) would be applicable. The amendment does not make unlawful conduct that was lawful when it occurred. Securities fraud was already subject to monetary liability. *See Landgraf,* 511 U.S.

---

**13.** In so ruling, the Court considered as the "traditional view" the principle that the law to be applied in a nondischargeability action is the law in force at the time of decision. It canvassed a number of cases that had considered the issue and found that the greater number of District and Bankruptcy Court cases had held that the law in effect as of the date of the filing should govern. *Hudson,* 34 B.R. at 692. It ultimately rejected their reasoning. Assuming, *arguendo,* the issue is open in the Second Circuit, this Court also rejects the "non-traditional" view.

at 281, 114 S.Ct. 1483("Concerns about a lack of fair notice are further muted by the fact that such discrimination was in many cases ... already subject to monetary liability ..."). The Debtor may have filed the petition herein with the intention of discharging the Plaintiff's debt, and he may have hoped that the law would not change, "but his hopes alone do not create a right." *Hudson*, 34 B.R. at 694. It cannot be said that application of § 523(a)(19) in this case upsets any "settled expectations" of the Debtor that are entitled to protection.

The Debtor argues that the exceptions to discharge must be construed strictly and narrowly against the creditor and liberally in favor of the debtor in order to further the remedial provisions of the Bankruptcy Code and to provide a debtor with a fresh start. *See Lines v. Frederick*, 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970); *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Every construction, however, has its limits. Congress determined that the fresh start policy should not release a Chapter 7 debtor from a claim based on securities fraud.

### CONCLUSION

The Debtor has not demonstrated that any genuine issue for trial exists. The Plaintiff has an arbitral award issued in her favor and against the Debtor, which specifically states the Debtor committed fraud in connection with trading in her securities account. For the reasons stated above, § 523(a)(19) is applicable, the debt based on the Award is nondischargeable, the amended complaint is deemed amended accordingly, and Plaintiff's motion for summary judgment is granted. Plaintiff shall settle a judgment on three days' notice.