In re Foster J. GIBBONS, Debtor.

No. 03 Civ. 3405(JSR).

United States District Court,
S.D. New York.

July 16, 2004.

Foster J. Gibbons, New York City, pro se.

Dayton P. Haigney, New York, NY, for Louise M. Smith.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Debtor-appellant Foster J. Gibbons appeals the March 7, 2003 decision of the Honorable Allan L. Gropper, United States Bankruptcy Judge, granting summary judgment in favor of plaintiff-appellee Louise M. Smith on her adversary petition to bar Mr. Gibbons from discharging in bankruptcy his debt to Ms. Smith arising from an arbitral award issued in Ms. Smith's favor in connection with a securities fraud.

The pertinent facts are undisputed. In 1997, Ms. Smith opened a brokerage account with the Golden Lender Financial Group, Inc., later known as J.P. Gibbons & Co., Inc., a corporation that employed Foster J. Gibbons as, *inter alia,* its chief legal and compliance officer. *See* Affidavit of Louise Smith, sworn to September 5, 2002, at ¶¶ 3–4, 7. Between 1997 and 1999, Ms. Smith's account was seemingly "churned," *i.e.,* a total of more than $1.5 million in purchases and sales of securities were made through Ms. Smith's account even though the account's average daily balance was $28,762. Ultimately, Ms. Smith lost her entire investment. *Id.* at ¶ 5. Ms. Smith then commenced an arbitration proceeding against Mr. Gibbons and others, alleging violations of the federal securities laws, fraud, deceit, negligence and breach of fiduciary duty. *Id.* at ¶ 8; Declaration

of Dayton P. Haigney, III, dated January 9, 2004, Ex. 1 (Exhibits attached to plaintiff's motion for summary judgment) at Ex. B (Statement of Claim and Demand for Arbitration).

On November 6, 2000, the arbitration panel issued a monetary award in favor of Ms. Smith and against Mr. Gibbons and others. The award explicitly states that "[t]he case involved the purchase and/or sale of numerous securities" and that "[t]he panel made a specific finding that Respondent[ ] ... Foster J. Gibbons ... committed fraud." *See In the Matter of Arbitration Between Louise M. Smith v. Golden, Lender Financial Group, et al.*, No. 99–04363, 2000 WL 33171772, at *2, 4 (N.A.S.D. December 21, 2000). The award was confirmed by the applicable federal courts. *See Gibbons v. Smith*, No. 01 Civ. 1224 (S.D.N.Y. March 22, 2002), *aff'd, Gibbons v. Smith*, 67 Fed.Appx. 52, 2003 U.S.App. LEXIS 11548 (2d Cir. June 9, 2003) (unpublished).

Meanwhile, in July 2001, Mr. Gibbons filed for bankruptcy in the Southern District of New York. In response, Ms. Smith filed the petition here in issue, opposing any discharge in bankruptcy of the arbitration award she had obtained against Mr. Gibbons.

In granting summary judgment in favor of Ms. Smith's petition, the Bankruptcy Court relied on a provision of the Sarbanes–Oxley Act of 2002 now codified in 11 U.S.C. § 523(a)(19), that disallows discharge for any debt that:

(A) is for—

(i) the violation of any of the Federal securities laws ... any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and

(B) results from—

(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

■ Although Mr. Gibbons makes a half-hearted attempt to argue otherwise, it is facially apparent that the arbitration award against him falls four-square within the scope of this provision. Gibbons' primary argument, however, is that, since the provision was enacted after he filed for bankruptcy and since, in his view, it does not apply retroactively, therefore it should not be applied to his case.

■ A petition in bankruptcy, however, is merely an *application* for discharge; prior to receiving a discharge, a debtor has "no vested right in having the law remain as it was at the time he filed his petition." *Hudson Welfare Dep't v. Roedel*, 34 B.R. 689, 694 (D.N.J.1983). *See also In re Sloss*, 192 F.Supp. 136, 137 (S.D.N.Y.1961) (at the time of filing, a debtor does not have a vested right to discharge). Thus, as the Second Circuit has repeatedly held, determinations of whether or not a debtor is entitled to a discharge in bankruptcy of any given debt are governed by the law in force at the time the judge passes on the question of the discharge of that debt. *In re Spell*, 650 F.2d 375, 377 (2d Cir.1981); *In re Blair*, 644 F.2d 69, 69 (2d Cir.1980). *See also In re Sloss*, 192 F.Supp. at 137.[1]

---

1. While a few courts in other circuits appear to disagree—*see, e.g., Matter of Flamini*, 19

Here, the Bankruptcy Court did not rule on the discharge of the debt here at issue until well after the enactment of the Sarbanes–Oxley Act. Thus, no problem of retroactivity is here involved.

Accordingly, the Court affirms Judge Gropper's decision and denies Mr. Gibbons' appeal. Clerk to enter judgment.

SO ORDERED.

B.R. 303, 308 (Bankr.E.D.Mich.1982) (the law at the time of filing for bankruptcy determines discharge), *but see Royal Indemnity Co. v. Cooper,* 26 F.2d 585, 596–87 (4th Cir. 1928)(the law at the time of discharge governs)—the instant case is governed, obviously, by Second Circuit precedent.