In re Jan J. LEWANDOWSKI, Debtor.

In re Jan Lewan Show Gifts, Debtor.

In re J.R.D. Productions, Inc., Debtor.

Peter C. Harvey, Attorney, General of New Jersey on behalf of Franklin L. Widmann, Chief of the New Jersey Bureau of Securities, Plaintiff,

v.

Jan J. Lewandowski, Defendant.

Bankruptcy Nos. 5–02–bk–01435, 5–02–bk–01433, 5–02–bk–01434.
Adversary No. 5–03–ap–50324.

United States Bankruptcy Court,
M.D. Pennsylvania.

Jan. 27, 2005.

John H. Doran, Esq., Wilkes–Barre, PA, for Debtor.

## OPINION [1]

JOHN J. THOMAS, Bankruptcy Judge.

Currently pending before this Court is the New Jersey Bureau of Securities' ("NJBS") Motion for Summary Judgment. For the reasons set forth herein, NJBS' Motion is granted.

### PROCEDURAL HISTORY

On October 9, 2003, NJBS filed its *Complaint to Determine Debt to Be Non–Dischargeable* against the Defendant, Jan Lewandowski. Defendant filed a timely answer on November 10, 2003.

NJBS filed its pending motion on March 11, 2004. Mr. Lewandowski caused a response to be filed on his behalf on March 31, 2004. Oral argument was held on January 13, 2005, whereby the parties addressed the Court's concerns with respect to particular legal issues.

### JURISDICTION

The present adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and this Court has jurisdiction under 28 U.S.C. §§ 1334, 157(a) and

---

1. Drafted with the assistance of Wendy E. Morris, Law Clerk.

Middle District of Pennsylvania Standing Order Misc. 84–0203 to render a decision on the pending motion.

### UNDISPUTED MATERIAL FACTS

Mr. Lewandowski, filed a petition for relief under Chapter 13 of the Bankruptcy Code ("Code") on April 5, 2002.

The Attorney General for the State of New Jersey filed a "Civil Action" against Mr. Lewandowski, Jan Lewan Show Gifts, Inc., and JRD Productions, Inc. in the Superior Court of New Jersey, Chancery Division–General Equity, on June 25, 2002 on behalf of New Jersey's Bureau of Securities.[2] The complaint alleged several violations of New Jersey's Uniform Securities Law and demanded equitable and penal relief.[3] On January 23, 2003, New Jersey State Judge R. Benjamin Cohen issued an order in favor of the NJBS based on oral argument and a showing of good cause. Pursuant to the order, the defendants were found to have violated the asserted statutory provisions, enjoined from engaging in certain activities, ordered to refund purchasers' money, pay restitution, disgorge all profits gained through their violations and pay a "civil monetary penalty of $950,000." *See* Doc. 1A, Exhibit A.

Mr. Lewandowski's Chapter 13 case was converted into a Chapter 7 on April 18, 2003.

### DISCUSSION

The party moving for summary judgment bears the burden of proving the absence of any genuine issue as to all material facts relevant to the cause of action. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once satisfied, the respondent must present evidence sufficient to establish the existence of each element of its case that warrants a decision in its favor. *See Huang v. BP Amoco Corp.,* 271 F.3d 560, 564 (3d Cir.2001)(citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548).

When ruling on a motion for summary judgment, a "judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253–54, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The standard of proof applicable to the asserted cause of action should be taken into account when measuring a movant's success on the motion. *See id.*

Notwithstanding issues of credibility or factual disputes, summary judgment is appropriate when the record, as a whole, points in one direction and the respondent fails to present evidence or inferences that would allow a reasonable mind to rule in its favor. *See Schoonejongen v. Curtiss–Wright Corp.,* 143 F.3d 120, 130 (3d Cir.1998)(citing *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). The moving party cannot succeed on a summary judgment motion if there is any evidence in the record from any

---

**2.** During oral argument, this Court raised the issue of whether this state court action violated Defendant's automatic stay and was therefore *void ab initio.* Mr. Lewandowski's counsel however conceded to the NJBS' position that its conduct fell within the "police and regulatory power" exception to the Code's automatic stay provision. *See* 11 U.S.C. § 362(b)(4).

**3.** The NJBS' complaint contained the following counts: (1) Offering and selling unregistered securities—N.J. Stat. Ann. § 49:3–60; (2) Employing unregistered agents—N.J. Stat. Ann. § 49:3–56(b); (3) Acting as agents without registering—N.J. Stat. Ann. § 49: 3–56(a); (4) Making untrue statements of a material fact or to omit to state a material fact— N.J. Stat. Ann. § 49:3–52(b); (5) Making untrue statements of a material fact or to omit to state a material fact—N.J. Stat. Ann. § 49:3–52(b).

source from which a reasonable inference in the respondent's favor may be drawn. *See Zenith Radio Corp. v. Matsushita,* 723 F.2d 238, 258 (3d Cir.1983), *rev'd on other grounds,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In its motion, the NJBS proffers a number of reasons based on §§ 523(a)(2), 523(a)(4), 523(a)(6), 523(a)(7), and 523(a)(19) of the Code as to why its claim against Mr. Lewandowski should be excepted from discharge as a matter of law. Its ability to succeed under § 523(a)(19) will foreclose further judicial review of dischargeability issues with respect to the remaining counts of the complaint.

■ Under § 523(a)(19), a debt is excepted from a debtor's discharge if it:

(A) is for—

(I) the violation of any of the Federal securities laws ..., any State securities laws, or any regulation or order issued under such Federal or State securities laws; or

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and—

(B) results from—

(I) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;

(ii) any settlement agreement entered into by the debtor; or

(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

11 U.S.C. § 523(a)(19)

Congress added § 523(a)(19) to the Code on July 30, 2002 as part of Title VIII of the Sarbanes–Oxley Act 2002, commonly referred to as the Corporate and Criminal Fraud Accountability Act of 2002. *See* Pub.L. No. 107–204, 116 Stat. 745 (2002). Through the Sarbanes–Oxley Act, Congress sought "to protect investors by improving the accuracy and reliability of corporate disclosures made pursuant to the securities laws, and for other purposes." *See id.* Congress' inclusion of § 523(a)(19) was "meant to prevent wrongdoers from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible." *See* Legislative History of Title VIII of HR 2673: The Sarbanes–Oxley Act of 2002, 148 Cong. Rec. S7418 (July 26, 2002).

The NJBS argues that although § 523(a)(19) was enacted after the filing date of Mr. Lewandowski's bankruptcy petition, it is applicable in the current proceeding since courts generally apply the law in effect on the date an issue is decided. It relies on *Smith v. Gibbons (In re Gibbons),* 289 B.R. 588 (Bkrtcy.S.D.N.Y. 2003), *aff'd* 311 B.R. 402 (S.D.N.Y.2004), for support.

Without reference to supporting caselaw, Mr. Lewandowski asserts the argument that the law in existence at the time his petition was filed should ultimately control the outcome of this proceeding. As such, § 523(a)(19) should be deemed inapplicable. However, if this Court does conclude that § 523(a)(19) applies, Mr. Lewandowski maintains that "at the time of filing the claim was not in the form of a judgment, order, or settlement agreement. Since objections to discharge are construed strictly, the claim in existence at the time of filing was not sufficient to support nondischargeability under § 523(a)(19)." *See* Doc. 13A at 9.

Several courts have had cause to consider the underlying issue—whether a federal statute, enacted after the events at issue,

should govern in cases commenced before its enactment—with respect to, then newly enacted, dischargeability exceptions.[4] Of the few published opinions concerning § 523(a)(19), only *Gibbons* and *Peterman v. Whitcomb (In re Whitcomb)*, 303 B.R. 806 (Bkrtcy.N.D.Ill.2004)(relying on *Gibbons* ), have reflected on this issue.

The Supreme Court addressed this issue in *Landgraf v. USI Film Prod.* with respect to a provision in Title VII of the Civil Rights Act of 1964. *See* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf,* the Court reconciled two potentially inconsistent rules of statutory construction:

> The first is the rule that "a court is to apply the law in effect at the time it renders its decision," *Bradley,* 416 U.S., at 711, 94 S.Ct., at 2016. The second is the axiom that "[r]etroactivity is not favored in the law," and its interpretive corollary that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen,* 488 U.S., at 208, 109 S.Ct., at 471.

*Id.* at 264, 114 S.Ct. 1483.

The Supreme Court went on to hold that whenever a question concerning the temporal reach of a newly enacted statute in a pending case is raised, courts must engage in a two-step analysis:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increased a party's liability for past conduct, or imposed new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. 1483.

■ The Supreme Court had cause to readdress the *Landgraf* analysis in *Lindh v. Murphy* and added an additional step:

> In determining whether a statute's terms would produce a retroactive effect, however, and in determining a statute's temporal reach generally, our

---

4. The courts that have addressed this issue have engaged in various methods of legal analysis—if at all-in reaching their respective conclusions. *See e.g., Rashid v. Powel (In re Rashid),* 210 F.3d 201, 204 n. 1 (3d Cir. 2000)—*section 523(a)(13); Moraes v. Adams (In re Adams),* 761 F.2d 1422, 1427 (9th Cir. 1985)—*sections 523(a)(6) & (9); Franklin v. New Mexico,* 730 F.2d 86, 87–88 (10th Cir. 1984)—*section 523(a)(5); United States v. Rice,* 182 B.R. 759, 762 (N.D.Ohio 1994)—*section 523(a)(8); Hudson County Welfare Dep't v. Roedel,* 34 B.R. 689, 692–96 (D.N.J. 1983)—*section 523(a)(5); Georgia Higher Educ. Assistnace Corp. v. Broughton (In re Broughton),* 6 B.R. 1011, 1012–18 (N.D.Ga. 1980)—*section 523(a)(8); Greco v. Sallie Mae Serv. (In re Greco),* 251 B.R. 670, 680–82 (Bkrtcy.E.D.Pa.2000)—*section 523(a)(8); Vinci v. Pennsylvania Higher Educ. Assistance Agency (In re Vinci),* 232 B.R. 644, 650 (Bkrtcy.E.D.Pa.1999)—*section 523(a)(8);* In re Milburn, 218 B.R. 862, 865 (Bankr. W.D.Ky.1998)—*section 523(a)(15); United States v. Gelb (In re Gelb),* 187 B.R. 87, 90 n. 6 (Bkrtcy.E.D.N.Y.1995)—*section 523(a)(13); BT Commercial Corp. v. Kochekian (In re Kochekian),* 175 B.R. 883, 885 n. 1 (Bkrtcy. M.D.N.C.1995)—*section 523(a)(13); FDIC v. Gaubert (In re Gaubert),* 149 B.R. 819, 825 (Bkrtcy.E.D.Tex.1992)—*section 523(e); Matter of Flamini,* 19 B.R. 303, 305–308 (Bankr. E.D.Mich.1982)—*section 523(a)(5).*

normal rules of construction apply. Although *Landgraf*'s default rules would deny application when a retroactive effect would otherwise result, other construction rules may apply to remove even the possibility of retroactivity (as by rendering the statutory provision wholly inapplicable to a particular case)....

521 U.S. 320, 326, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *see also Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 160 (3d Cir.1998). "Thus, the Supreme Court held that if a congressional intent to *not* apply a statute retrospectively can be discerned, the courts are to follow that intent, without regard to whether the statute has retroactive effect. Underlying this new step in the analysis was the traditional presumption against retroactivity." *Mathews*, 161 F.3d at 161. Simply stated, if an intent to apply the statute prospectively can be found, a court need not bother with discerning whether the statute has retroactive effect. *See id.* at 162.

■ With regard to the present case, this Court must ascertain under the first step of the *Landgraf/Lindh* analysis whether Congress expressly prescribed the proper reach of § 523(a)(19). A thorough reading of § 523(a)(19) fails to expose any express congressional directive that its temporal reach is to be measured either retroactively *or* prospectively.

The second step involves an examination, under normal rules of statutory construction, for evidence of a congressional intent to only apply the statute prospectively. The legislative history associated with this provision lacks any indication that § 523(a)(19) was only to receive prospective treatment. Instead, the Section–

by–Section Analysis of the Corporate and Criminal Fraud Accountability Act, which is included in the legislative history of the Sarbanes–Oxley Act, voices a clear congressional intention that § 523(a)(19) should apply "to the maximum extent possible ... to existing bankruptcies." *See* 148 Cong. Rec. at S7418.

■ Lastly, the final step in the *Landgraf/Lindh* analysis requires consideration of the retroactive effect that application of § 523(a)(19) would have in Mr. Lewandowski's bankruptcy. A statute is deemed retrospective if "it would impair rights a party possessed when he acted, increased a party's liability for past conduct, or imposed new duties with respect to transactions already completed." *See Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483. The issue of retroactivity gives rise to an issue of fairness and may raise questions of constitutionality.[5] However, absent a violation of a constitutional provision, "the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *See id.* at 267, 114 S.Ct. 1483. The Supreme Court has held in specific instances that even absent specific legislative authorization, application of an intervening statute that authorizes or affects the propriety of prospective relief, confers or ousts jurisdiction or changes procedural rules in suits arising before their enactment does not raise concerns of retroactivity. *See id.* at 273–75, 114 S.Ct. 1483 (citations omitted).

Mr. Lewandowski has not attempted to argue that retrospective application of § 523(a)(19) would impair any rights he may have possessed when he acted, that it would increase his liability for past conduct

---

**5.** Constitutional restrictions on retroactive legislation are articulated in several provisions: *Ex Post Facto* Clauses (U.S. Const. art. I, § 9, cl. 3 & art. I, § 10, cl. 1); Takings Clause (U.S. Const.amend. V); Prohibition on "Bills of Attainder" (U.S. Const. art. I, §§ 9–10); & the Due Process Clause (U.S. Const. amend. V & XIV).

or even that it would impose new duties with respect to his prior actions. He instead argues that § 523(a)(19) "is a statute which contains both civil and criminal penalties and would be even more critical to be applied prospectively." *See* Doc. 13A at 9. This statement is made without reference to any supporting authority and is absent of any consideration of the framework established in the previously cited Supreme Court and Third Circuit cases concerning the issue of prospective and retroactive statutes.[6]

 The overall purpose of the NJBS' adversary complaint is to obtain a declaration that its claim against Mr. Lewandowski is excepted, under a number of theories, from a bankruptcy discharge. Although the Code contains provisions that can discharge a debtor's debts, it is limited to some extent and subject to a variety of conditions precedent. Only Congress can prescribe the provisions for a bankruptcy discharge and it "has the constitutional power to provide for the discharge of certain debts and to except certain debts from discharge." *See* U.S. Const. art. I, § 8, cl. 4; *Feuer v. Pennsylvania College of Podiatric Medicine (In re Feuer)*, 195 B.R. 866, 870 (Bkrtcy.E.D.Pa.1996)(internal quotations omitted). This by no means evidences a statutory guarantee that a debtor is automatically entitled to a discharge once the bankruptcy process is commenced. A bankruptcy discharge is a privilege, not a constitutional right. *See United States v. Kras*, 409 U.S. 434, 446–47, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). A debtor does not possess a vested right to receive a discharge. *See Gibbons*, 289 B.R. at 596; *Esposito v. Connecticut (In re*

*Esposito)*, 31 B.R. 872, 876 (Bkrtcy.Conn. 1983). "A fortiori, [a debtor] has no right to discharge of a specific obligation. A discharge in bankruptcy is a legislatively created benefit; Congress may grant it on conditions, and could withhold it altogether if it chose." *Hudson County Welfare Dep't*, 34 B.R. at 694. The enactment of § 523(a)(19) does not upset any "settled expectation" that a discharge is either forthcoming and subject to the protection of the presumption against retroactivity. *See Gibbons*, 289 B.R. at 597.

 In line with this analysis is the Court's conclusion that, as a matter of law, application of § 523(a)(19) will not increase Mr. Lewandowski's liability. A chapter 7 debtor has no statutory guarantee that any of his debts will be discharged. *Compare* 11 U.S.C. §§ 523, 727. The mere filing of a bankruptcy petition does not create an expectation or presumption that all or even that certain debts will be discharged. *See Gibbons*, 289 B.R. at 597. The possibility is always present that a chapter 7 debtor could walk out of the bankruptcy process still having to satisfy all of his pre-petition financial liabilities. As such, a discharge exception under § 523(a)(19) will not increase his liabilities. *See e.g. Landgraf*, 511 U.S. at 284, 114 S.Ct. 1483 ("Neither in *Bradley* itself, nor in any case before or since in which Congress had not clearly spoken, have we read a statute substantially increasing the monetary liability of a private party to apply to conduct occurring before the statutes enactment.").

Nor will § 523(a)(19) impose any new duties on Mr. Lewandowski with regard to conduct associated with transactions he

---

6. Although the present matter is an issue of first impression for the Court, the legal analysis employed in this decision is neither nouveau or so unsettled that Mr. Lewandowski could later justifiably argue that he was not given a fair opportunity to respond to the

Court's reliance on *Landgraf/Lindh*. Mr. Lewandowski was even given notice of *Landgraf* through the NJBS' reliance on *Smith v. Gibbons (In re Gibbons)*, 289 B.R. 588 (Bkrtcy. S.D.N.Y.2003), *aff'd* 311 B.R. 402, in its brief in support of the motion.

has already completed. Section 523(a)(19) "does not make unlawful conduct that was lawful when it occurred." *See Gibbons*, 289 B.R. at 596. The conduct which violated the security laws of the State of New Jersey was already unlawful and subject to monetary liability when his bankruptcy petition was filed.

Furthermore, there does not appear to be any constitutional limitations that would prohibit the application of § 523(a)(19). Mr. Lewandowski claims that § 523(a)(19) is in part criminal and should only apply prospectively. This Court disagrees.

The *ex post facto* clause of the Constitution prohibits a court from retrospectively applying a change in the law, which adversely affects the offender, to events occurring before its enactment. *See Mickens–Thomas v. Vaughn*, 321 F.3d 374, 384 (3d Cir.2003). This prohibition applies only to criminal cases or punitive legislation. *See id.* at 383. "However, the *ex post facto* effect of a law cannot be evaded by simply giving a civil form to that which is essentially criminal." *United States v. D.K.G. Appaloosas, Inc.*, 829 F.2d 532, 541 (5th Cir.1987)(relying on *Burgess v. Salmon*, 97 U.S. (7 Otto) 381, 385, 24 L.Ed. 1104 (1878)).

Mr. Lewandowski has not provided any proof that § 529(a)(19) is "so punitive either in purpose or effect as to negate [a congressional intention] to deem it civil." *See Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)(Supreme Court outlines framework for determining whether a statute is civil or criminal); *see also Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997); *United States v. Ward*, 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). A debtor cannot hold a legitimate expectation that a discharge is forthcoming once the bankruptcy process is commenced. As stated previously, a debtor does not hold a property interest in receiving a discharge. *See United States v. Hampton (In re Hampton)*, 47 B.R. 47, 50 (Bkrtcy.N.D.Ill.1985)(internal quotations omitted)(relying on *Stellwagen v. Clum*, 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918)). It would be inappropriate to conclude that excepting a particular debt from a "yet-to-be-awarded" discharge order, which a debtor lacks an interest in, is either penal or a violation of a debtor's rights. *See Greco v. Sallie Mae Serv. Corp. (In re Greco)*, 251 B.R. 670, 682 (Bkrtcy.E.D.Pa.2000)(court reviewed the *ex post facto* nature of section 523(a)(8)).

Based on the current disposition of Mr. Lewandowski's bankruptcy, this Court concludes that the application of § 523(a)(19) in his bankruptcy does not violate his constitutional rights. *See United States v. Hampton (In re Hampton)*, 47 B.R. 47, 50 (Bkrtcy.N.D.Ill.1985).

Moreover, there is clear evidence in the statute's legislative history of a congressional intent to apply § 523(a)(19) to all pending bankruptcy case. This includes Mr. Lewandowski's bankruptcy. This Court therefore finds, as a matter of law, that § 523(A)(19) is applicable in Mr. Lewandowski's bankruptcy.

NJBS' bears the burden of establishing by a preponderance of the evidence that its claim is excepted from discharge under § 523(a)(19). *See Grogan v. Garner*, 498 U.S. 279, 288, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). This burden naturally necessitates proof that its claim constitutes a "debt that arose before the date of the order of relief" in Mr. Lewandowski's bankruptcy is necessary. *See* 11 U.S.C. §§ 523(a)(19); 727(b).

At first blush, it appears that the debt is nothing more than a post-petition obligation and therefore not subject to a discharge under § 727. However, the NJBS'

post-petition claim arose prior to the conversion of Mr. Lewandowski's Chapter 13 case into its current disposition as a Chapter 7. Pursuant to § 348(d) of the Code, this claim "shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition." For all intents and purposes, NJBS' claim is statutorily classified as a pre-petition debt in Mr. Lewandowski's bankruptcy case. *Accord Volk of Philadelphia v. Gelfand (In re Gelfand)*, 47 B.R. 876, 878 (Bkrtcy.E.D.Pa.1985)(claim that arose after order for relief under chapter 7, but before conversion from chapter 11, was subject to a dischargeability determination under section 523(a)(2)(B)).

 With regard to the remaining elements of § 523(a)(19), the parties readily agree that NJBS' claim is based on violations of New Jersey's Uniform Securities Law. What they disagree on is whether the final element has been established as a matter of law. Mr. Lewandowski argues that "at the time of filing the claim was not in the form of a judgment, order, or settlement agreement ... [T]he claim in existence at the time of filing was not sufficient to support nondischargeability under § 523(a)(19)." *See* Doc. 13A at 9.

As this Court established earlier, NJBS' claim—which is in the form of a state court order—must be treated as if it arose prior to the filing of Mr. Lewandowski's petition based on § 348(d). This Court therefore concludes, as a matter of law, that the debt which the NJBS relies upon for its requested relief falls within the parameters of a "judgment, order, or settlement agreement."

As a whole, the undisputed material facts establish NJBS' claim as one that is based on the violation of a state's securities laws and resulted in an order entered in a state judicial proceeding. NJBS'

claim against Mr. Lewandowski is excepted from discharge under § 523(a)(19).