**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DIANE IDA URIOSTEGUI,<br><br>Debtor. | BAP No. CC-24-1174-GFS<br><br>Bk. No. 2:23-bk-17721-DS |
| DIANE IDA URIOSTEGUI,<br>Appellant,<br>v.<br><br>GREGORY W. DOWLING,<br>Appellee. | **OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Deborah J. Saltzman, Bankruptcy Judge, Presiding

APPEARANCES:

Rob Uriostegui on brief for appellant; Michael Jay Berger argued for appellee.

Before: GAN, FARIS, and SPRAKER, Bankruptcy Judges.

GAN, Bankruptcy Judge:

## INTRODUCTION

In 2018, the California Superior Court entered judgment against Diane Ida Uriostegui for her financial elder abuse of Prescott Dowling. The state court held that she fraudulently provided false information to

Prescott[1] to convince him to disinherit his son Gregory, and other family members, and make her the sole trustee and beneficiary of the Dowling Family Survivor's Trust.

After Ms. Uriostegui filed a chapter 7[2] petition, Gregory objected to her homestead exemption claim under § 522(q)(1)(B)(ii),[3] which limits state law exemptions to $189,050 if, as relevant here, the debtor owes a debt arising from "fraud, deceit, or manipulation in a fiduciary capacity." The bankruptcy court interpreted this section to require the fraud to be in a fiduciary capacity, and it determined that the state court judgment satisfied this criterion because Ms. Uriostegui became trustee and beneficiary of the trust through her fraudulent actions.

---

[1] We refer to the Dowlings by their first names for ease of reference and to avoid confusion. No disrespect is intended.

[2] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

[3] Section 522(q)(1)(B)(ii) provides:

(q)(1) As a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of an interest in property described in subparagraphs (A), (B), (C), and (D) of subsection (p)(1) which exceeds in the aggregate $189,050 [originally "$125,000," adjusted effective April 1, 2022] if—. . .

(B) the debtor owes a debt arising from—. . .

(ii) fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 or under section 6 of the Securities Act of 1933. . . .

We agree that § 522(q)(1)(B)(ii) requires that a debt for fraud arise from acts performed in a fiduciary capacity. But we disagree that the state court judgment establishes fraud in a fiduciary capacity against Ms. Uriostegui. Her fraudulent statements to Prescott occurred before she was a trustee, and nothing in the record shows her fraudulent statements were made in a fiduciary capacity. Accordingly, we REVERSE. We publish to clarify that, for purposes of § 522(q)(1)(B)(ii), fraud must be in a fiduciary capacity, which requires an express or technical trust imposed prior to the wrongdoing that created the debt.

## FACTS[4]

Prescott and his wife Ellen established the Dowling Family Trust in 2005, and they amended and restated it in 2009. They named their eldest son Gregory as successor trustee, and named Gregory, Gregory's children, and their youngest son Richard,[5] as beneficiaries. The trust provided that upon the death of either spouse, the trust estate would be split between the Dowling Family Decedent's Trust and the Dowling Family Survivor's Trust. Ellen died in 2011, and Richard died shortly after, leaving Prescott as trustee of the Dowling Family Survivor's Trust and Gregory and his

---

[4] We exercise our discretion to take judicial notice of documents electronically filed in the main bankruptcy case and related adversary proceeding. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

[5] The record indicates that Ms. Uriostegui had a romantic relationship with Richard sometime during the 1990s. She remained a friend to Ellen and Prescott thereafter. The Dowlings had a third son who predeceased them.

3

children as beneficiaries. In 2015, Prescott amended the Dowling Family Survivor's Trust to name Ms. Uriostegui as trustee and sole beneficiary.

After Prescott died in 2016, Gregory sued Ms. Uriostegui for elder abuse and to set aside the amended trust. The state court held that the 2015 amendment was invalid based on Prescott's lack of testamentary and contractual capacity, and Ms. Uriostegui's undue influence. The court determined that Ms. Uriostegui acted with "malice, oppression, and fraud" by providing inaccurate, false, or misleading information to Prescott to persuade him to disinherit his family, and it found her liable for financial elder abuse under California Welfare and Institutions Code § 15610.30. The state court entered a monetary judgment, including punitive damages, against Ms. Uriostegui, and it imposed a constructive trust on assets distributed from the trust. The Court of Appeal affirmed the judgment with a modification that allowed Ms. Uriostegui to retain ownership of her home.

In 2023, Ms. Uriostegui filed a chapter 7 petition. She scheduled assets having a total value of $952,080, of which $950,000 was attributed to her residence. Ms. Uriostegui claimed the California homestead exemption, which at the time of filing was $687,378.

Gregory filed a proof of claim for $2,076,124, secured by a judgment lien against Ms. Uriostegui's residence. He filed an objection seeking to limit Ms. Uriostegui's homestead exemption to $189,050 pursuant to § 522(q)(1)(B)(ii), and he argued that the state court judgment established

4

that Ms. Uriostegui owed a debt arising from fraud and manipulation in a fiduciary capacity.[6] Gregory argued that Ms. Uriostegui's prior testimony proved that she did not reasonably need more than $189,050 for her support.

In response, Ms. Uriostegui claimed that her fraud was not in a fiduciary capacity. She maintained that her undue influence occurred prior to the 2015 amendment, while Prescott was trustee, and she did not become a trustee until his death in 2016. According to Ms. Uriostegui, when she became trustee upon Prescott's death, she owed no fiduciary duties because she was the sole beneficiary.

At the initial hearing, Gregory argued that the provision "in a fiduciary capacity" applied only to "manipulation" and not to "fraud" or "deceit." The bankruptcy court disagreed and held that Ms. Uriostegui's fraud must be "in a fiduciary capacity." The court requested further briefing on whether the state court judgment included any findings to support Gregory's claim that the fraud occurred while Ms. Uriostegui was acting as a fiduciary.

---

[6] Gregory also filed an adversary complaint seeking to make the judgment debt nondischargeable and to deny Ms. Uriostegui's discharge. The bankruptcy court granted Gregory's motion for summary judgment, holding the debt nondischargeble under § 523(a)(2)(A) and (a)(6) and denying Ms. Uriostegui's discharge under § 727(a)(3) based on her failure to provide an accounting of distributed assets, as required by the state court.

In his supplemental brief, Gregory argued that the court was not bound by analogy to § 523(a)(4) in determining what constitutes "fiduciary capacity," and he contended that Ms. Uriostegui's undue influence was sufficient to render her a fiduciary. He noted that, as part of its determination of undue influence, the state court relied on Prescott's execution of documents giving Ms. Uriostegui power of attorney and authority to make decisions regarding his healthcare. Gregory argued that under California Probate Code § 4266, "[t]he exercise of authority by an attorney-in-fact is subject to the attorney-in-fact's fiduciary duties."

Ms. Uriostegui asserted that the state court never determined that she was acting under a power of attorney when Prescott executed the 2015 amendment. She argued that the power of attorney document—which was not attached to the objection and is not readily available on the docket— took effect only upon Prescott's incapacity, which did not occur prior to his death. She maintained that "fiduciary" in the context of limiting a homestead exemption should be construed congruently with the use of that term for purposes of nondischargeability, and she cited *Ragsdale v. Haller*, 780 F.2d 794, 796 (9th Cir. 1986), for the proposition that "fiduciary," as a matter of federal law, requires a trust giving rise to the fiduciary relationship be imposed prior to any wrongdoing and for the debtor to be a trustee "before the wrong and without reference to it." Ms. Uriostegui also argued that she should be entitled to an evidentiary hearing to establish

6

whether her homestead exemption was reasonably necessary for her support.

At the continued hearing, the bankruptcy court determined that Ms. Uriostegui had been afforded due process and an evidentiary hearing was unnecessary because the essential facts were undisputed. The court held that the record was clear that Ms. Uriostegui committed fraud while acting in a fiduciary capacity because she became a fiduciary through fraud.

The bankruptcy court entered an order limiting the homestead objection, and Ms. Uriostegui timely appealed.[7]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(B). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err by limiting Ms. Uriostegui's homestead exemption under § 522(q)(1)(B)(ii)?

## STANDARD OF REVIEW

We review de novo a bankruptcy court's interpretation of the Bankruptcy Code, including the scope of a statutory exemption or its limitation. *See Valdellon v. PHH Mortg. Corp. (In re Valdellon)*, 665 B.R. 420,

---

[7] We subsequently granted a stay pending appeal requiring the chapter 7 trustee, in the event the property was sold, to hold the portion of proceeds Ms. Uriostegui claimed as the homestead exemption.

429 (9th Cir. BAP 2024); *Klein v. Chappell (In re Chappell)*, 373 B.R. 73, 76 (9th Cir. BAP 2007), *aff'd sub nom. Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206 (9th Cir. 2010). Under de novo review, "we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

Ms. Uriostegui argues that the bankruptcy court erred because her fraud did not occur while she was acting in a fiduciary capacity. Gregory contends that we are not bound by the Ninth Circuit's construction of "fiduciary" under § 523(a)(4), and we should affirm because Ms. Uriostegui's authority under the power of attorney was sufficient to make her fraudulent acts "in a fiduciary capacity."

## A.     Interpretation of § 522(q)(1)(B)(ii)

### 1.     Fraud must be in a fiduciary capacity.

The parties do not dispute the bankruptcy court's holding that fraud, for purposes of § 522(q)(1)(B)(ii), must be in a fiduciary capacity. Neither this Panel nor the Ninth Circuit has interpreted this section, but we agree with the bankruptcy court and the Texas bankruptcy court's decision, *In re Presto*, 376 B.R. 554, 593 (Bankr. S.D. Tex. 2007), that "in a fiduciary capacity" modifies "fraud," "deceit," and "manipulation."

The *Presto* court noted that similar language appears in § 523(a)(19)(A)(ii), which excepts from discharge debts for "common law fraud, deceit, or manipulation in connection with the purchase or sale of

8

any security." *Id.* at 592. Section 523(a)(19) was designed to prevent debtors convicted of securities fraud or other securities violations from obtaining a discharge of those debts. *Id.* (citing *Smith v. Gibbons (In re Gibbons)*, 289 B.R. 588, 592 (Bankr. S.D.N.Y. 2003), *aff'd*, 311 B.R. 402 (S.D.N.Y. 2004), a*ff'd*, 155 F. App'x 534 (2d Cir. 2005)). Thus, the purpose of § 523(a)(19) is to prevent discharge of debtors for securities-related fraud, not debts arising from any common law fraud. *Id.*

The *Presto* court further reasoned that "Congress has consistently linked the phrase 'fraud, deceit, or manipulation' to securities violations," and "[n]othing about the addition of 'in a fiduciary capacity' warrants a severance of this connection."[8] *Id.*; *see also id.* at n.41. And, if we interpret "fiduciary capacity" to modify only "manipulation," then **any** type of fraud or deceit would trigger the exemption limitation. *Id.* at 591-92.

We hold that § 522(q)(1)(B)(ii) requires a debt arising from "fraud, deceit, or manipulation" which occurred while the debtor was acting either in a fiduciary capacity or in connection with the purchase or sale of registered securities.

---

[8] The phrase "fraud, deceit, or manipulation" also appears in § 548(e)(2)(B). This section includes as avoidable transfers, any transfer of property by a debtor made within ten years of the petition date "made in anticipation of a judgment, settlement, civil penalty, equitable order, or criminal fine incurred by, or which the debtor believed would be incurred by— . . . (B) fraud, deceit, or manipulation in a fiduciary capacity or in connection with the purchase or sale of any security registered under section 12 or 15(d) of the Securities Exchange Act of 1934 or under section 6 of the Securities Act of 1933."

**2. We interpret "fiduciary capacity" in § 522(q)(1)(B)(ii) consistently with that term's use in § 523(a)(4).**

Gregory argues that we are not bound by the Ninth Circuit's construction of "fiduciary" under § 523(a)(4), and we should construe § 522(q) more broadly. We disagree.

The Supreme Court has held that "fiduciary" for purposes of nondischargeability is an issue of federal law. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934); *see also Ragsdale*, 780 F.2d at 796. "The broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context." *Ragsdale*, 780 F.2d at 796. Instead, the fiduciary relationship must "arise from an express or technical trust that was imposed prior to the wrongdoing that caused the debt." *Plyam v. Precision Dev. (In re Plyam)*, 530 B.R. 456, 471 (9th Cir. BAP 2015) (citations omitted). In other words, the fiduciary relationship must exist "before the wrong and without reference to it." *Ragsdale*, 780 F.2d at 796. To determine whether this narrow definition of fiduciary is satisfied, courts should look to state law. *Id.*

Gregory does not provide any cogent reason why the meaning of "fiduciary capacity" should be different under § 522(q)(1)(B)(ii), and nothing in the language of the statute indicates a contrary intent. The narrow definition of "fiduciary" in the nondischargeability context comports with the long-standing principle that "[e]xceptions to discharge are meant to be narrowly construed." *Wike v. State Bar of Nev. (In re Wike)*,

10

660 B.R. 683, 705 (9th Cir. BAP 2024). Similarly, narrowly construing a limitation to an exemption comports with the "strong policy . . . to interpret exemption statutes liberally in favor of the debtor." *Arrol v. Broach (In re Arrol)*, 170 F.3d 934, 937 (9th Cir. 1999).

The range of debts listed in § 522(q) further supports a narrow construction of "fiduciary capacity." Rather than limiting state law exemptions in every bankruptcy case involving nondischargeable debts, Congress designated a narrow set of circumstances that trigger the limitation. In addition to the provision at issue in this case, § 522(q) applies where a debtor convicted of a felony files a bankruptcy case in abuse of the Bankruptcy Code and where a debtor owes a debt arising from: (1) violations of state or federal securities laws, orders, or regulations; (2) civil remedies under 18 U.S.C. § 1964 of the Racketeer Influenced and Corrupt Organizations Act; or (3) criminal acts, intentional torts, and willful or reckless misconduct that caused serious physical injury or death to another within five years of the petition date. § 522(q)(1)(A)-(B).

Congress's deliberate choice to limit state law exemptions under only these specific circumstances reinforces a narrow construction of "fiduciary capacity." Thus, we interpret "fiduciary capacity" under § 522(q)(1)(B)(ii) to have the same meaning as under § 523(a)(4): the fiduciary relationship must be based on an express or technical trust and must be imposed prior to the wrongdoing that caused the debt.

11

**B.    The judgment does not evidence fraud in a fiduciary capacity.**

To sustain his objection under § 522(q)(1)(B)(ii), Gregory must prove that: (1) Ms. Uriostegui owes a debt arising from "fraud, deceit, or manipulation," and (2) that her wrongful actions occurred while she was acting in a fiduciary capacity. *See In re Oliver*, 649 B.R. 206, 215 (Bankr. E.D. Cal. 2023) (discussing burdens in objections to exemptions in California bankruptcy cases). Gregory asserts that the state court judgment satisfies these elements.

It is undisputed that the judgment debt arose from Ms. Uriostegui's fraud. But the judgment does not establish that she was acting in a fiduciary capacity when she made the fraudulent statements to Prescott. Ms. Uriostegui committed fraud to induce Prescott to amend the trust, but that occurred prior to the amendment, while Prescott was trustee.

Gregory argues that Prescott signed a document granting Ms. Uriostegui power of attorney, and thus, her fraudulent statements were made in a fiduciary capacity. It is true that state law imposes fiduciary obligations on a person acting through a power of attorney. But it is not clear that a power of attorney necessarily creates an "express or technical trust" as required by § 522(q)(1)(B)(ii). We need not address this issue, however, because the record does not evidence that Ms. Uriostegui used the power of attorney when she defrauded Prescott.

Ms. Uriostegui disputes that she had power of attorney, and because the document is not in the record, we cannot determine whether the

12

purported grant of authority was effective, whether it was conditional, or whether Ms. Uriostegui accepted it. The state court referenced the document signed by Prescott, but it did not rely on the validity of the document in determining Ms. Uriostegui's undue influence.

Nothing in the state court judgment indicates that Ms. Uriostegui acted through a power of attorney in perpetuating her undue influence. She made false and fraudulent statements to Prescott in her capacity as a family friend, not through a power of attorney. And Prescott directed his attorney to make the trust amendment, and he signed the document.

Because the state court judgment does not establish that Ms. Uriostegui committed fraud, deceit, or manipulation while acting in a fiduciary capacity, the bankruptcy court erred by limiting her homestead exemption under § 522(q)(1)(B)(ii).

## CONCLUSION

Based on the foregoing, we REVERSE the order of the bankruptcy court limiting Ms. Uriostegui's homestead exemption. Because the relevant debt arose from the judgment—and Gregory fully briefed the bankruptcy court of state court findings in support of his claim that Ms. Uriostegui acted in a fiduciary capacity—further proceedings are not necessary.